1998-NMCA-105

965 P.2d 323

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Shawn BARNETT, Defendant–Appellant.**

No. 18542.

Court of Appeals of New Mexico.

July 1, 1998.

Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Plaintiff-Appellee.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Public Defender, Santa Fe, NM, for Defendant-Appellant.

## OPINION

ARMIJO, Judge.

{1} Defendant appeals the trial court's order denying his motion to withdraw his plea of guilty to charges of burglary and conspiracy. Defendant asserts that he is entitled to withdraw his guilty plea because: (1) the prosecuting attorney had a conflict of interest in that she previously represented Defendant and counseled his plea in a substantially related case; (2) Defendant's trial counsel in the present case rendered ineffective assistance in counseling his plea; and (3) the trial court failed to properly inform Defendant of his rights concerning his sentencing as a habitual offender. We determine that the trial court properly informed Defendant of his rights concerning the habitual offender sentence. However, we conclude that Defendant had a right to disqualify the prosecuting attorney because she previously represented him in a substantially related matter. We vacate the trial court's order and remand for an evidentiary hearing on the issue of whether Defendant's ability to knowingly and voluntarily enter his plea was prejudiced by his trial counsel's failure to competently advise him regarding his right to disqualify the prosecuting attorney.

## I. BACKGROUND

{2}   On September 11, 1996, there was a dispute among Defendant and two other young men, Jackson Talvitie and Noel Carter. Defendant and Talvitie were arrested after they allegedly entered Carter's house and took property from the house. The men offered different accounts of the circumstances of Defendant's and Talvitie's entry, whether they armed themselves while in the house, and whose property was taken. There were no other witnesses to the incident. The Quay County Assistant District Attorney (Prosecutor) prepared and filed a criminal information alleging that Defendant committed aggravated burglary, conspiracy, and aggravated assault.

{3}   Immediately prior to his preliminary hearing, Defendant saw and recognized Prosecutor as the attorney who had previously represented him.[1] He also met his appointed defense counsel (Defense Counsel) in person for the first time. Defense Counsel told him about a plea offer she had received from Prosecutor. Defendant refused the plea offer and asked to speak to Prosecutor. Defense Counsel allowed Defendant to talk with Prosecutor, but cautioned Defendant not to talk about the facts of the case because Prosecutor represents the State and is not going to look out for Defendant's interests. In Defense Counsel's presence, Defendant confronted Prosecutor with the fact that Prosecutor had represented him in the past. The parties attempted to work out a plea agreement prior to the start of the preliminary hearing, but were unsuccessful.

{4}   At the start of the preliminary hearing, Defendant told Defense Counsel that he wanted more time to consider Prosecutor's plea offer. Defense Counsel then waived the preliminary hearing on his behalf in exchange for an agreement to keep the plea offer open until the end of the week. Plea negotiations continued beyond the end of the

week. Defendant continued to express his discomfort about Prosecutor's prior representation of him. He also continued to seek a more favorable plea agreement.

{5}   On October 31, 1996, immediately after the plea hearing of co-defendant Talvitie, the trial court conducted a plea hearing in Defendant's case. Defense Counsel did not appear at the plea hearing; she sent her assistant (Assistant Defense Counsel) in her place. Appearing for the State, Prosecutor stated the factual basis for the plea and presented a signed, written plea agreement as well as a supplemental criminal information alleging that Defendant had prior felony convictions for burglary, conspiracy, and larceny dating from March 3, 1993. Prosecutor explained that the State's reason for offering the plea was that there were conflicts between the witnesses' statements, especially concerning whether Defendant and Talvitie armed themselves during the dispute.

{6}   The trial court asked Defendant and Assistant Defense Counsel a series of questions concerning whether Defendant's plea was knowing, intelligent, and voluntary. However, no one informed the trial court that Prosecutor had represented Defendant in the past and counseled his plea concerning the prior felony convictions that provided the basis for sentencing Defendant as a habitual offender in this case. In addition, the plea agreement contained general language concerning Defendant's waiver of his rights. The trial court found that the plea was knowing, intelligent, and voluntary. Pursuant to the written plea agreement, Defendant was sentenced to two years imprisonment as a habitual offender; the remaining four and one-half year sentence for the burglary and conspiracy charges was suspended. After Defendant requested to be released from detention for a few days to put his affairs in order, Prosecutor commented on his prior history in an attempt to persuade the trial

---

1.   It is uncontradicted that on March 3, 1993, approximately three and one-half years prior to the September 1996 incident, Defendant pleaded guilty and was convicted of burglary, conspiracy, and larceny arising from another incident. Prosecutor was appointed to defend him on those charges, and she counseled his guilty plea. Prosecutor also represented Defendant on other occa-

sions between 1993 and 1995, including a magistrate court appearance regarding charges of driving while intoxicated (DWI) in October 1995. In August 1996, Prosecutor left private practice as a contract public defender and began working as an assistant district attorney in the Tenth Judicial District. She was elected to the office of District Attorney in November 1996.

court that Defendant was a flight risk and should not be released.

## II. MOTION TO WITHDRAW PLEA

{7} Defendant subsequently retained a new attorney who filed motions to withdraw Defendant's plea and to disqualify Prosecutor from any further proceedings in the case. The trial court provisionally disqualified Prosecutor from representing the State on Defendant's motion to withdraw his plea, appointed a special prosecutor to argue that motion, and scheduled an evidentiary hearing for March 12, 1997. Defendant testified on his own behalf and called Prosecutor as a witness at that hearing; Defense Counsel testified as a witness for the State. Defendant's new attorney also subpoenaed Prosecutor's files relating to her prior representation of Defendant.

{8} At the hearing, Prosecutor admitted that she had represented Defendant as his appointed counsel in the past and retained some of her files regarding her prior representation of Defendant after she left private practice to work at the District Attorney's office. She recalled that she counseled Defendant's plea in the 1993 felony case and was aware of that fact at the time she entered her appearance as an assistant district attorney in the present case in October 1996. However, it did not occur to her that she might have a conflict of interest because, in her view, the burglary and conspiracy charges she was prosecuting were not the same as, or substantially related to, the burglary and conspiracy charges for which she counseled Defendant's plea in 1993. Consequently, she did not research the issue or disclose the potential conflict to the trial court. Prosecutor acknowledged that when she met Defendant before the preliminary hearing in the present case, he asked: "How can you do this? You were my attorney." However, she did not inform Defendant that he could move to disqualify her.

{9} Defendant testified that he is 22 years old and Prosecutor had represented him four times in the past. When he saw her at the preliminary hearing, he remembered that she was his attorney and expressed his concern to her that she should not be prosecuting him. He also expressed his concerns to Defense Counsel throughout the proceedings. Neither Defense Counsel nor Assistant Defense Counsel ever inquired about the prior representation or told Defendant that Prosecutor could be disqualified. Assistant Defense Counsel did not explain the plea agreement to Defendant's satisfaction; he thought he was going to receive one year of imprisonment, not two.

{10} In her testimony, Defense Counsel confirmed that Defendant immediately recognized Prosecutor as his former attorney, and that he expressed concerns about whether she should be prosecuting him in the present case. However, Defense Counsel did not know that Prosecutor had counseled Defendant's guilty plea concerning the 1993 felony convictions which Prosecutor later used to enhance Defendant's sentence. Defense counsel did not inquire about the prior representation or raise it before the trial court because she believed that Defendant still wanted to proceed with the plea negotiations. Defense Counsel characterized the case as a "swearing match" between the witnesses, and noted the possibility that the victim might change his testimony or be reluctant to testify because he was Defendant's friend. She also testified that sometimes her clients will accept a plea offer on a crime they did not commit in order to avoid trial. In this case, she informed Defendant that he risked a sentence of eighteen years of imprisonment if he went to trial.

{11} After the hearing, the trial court took the matter under advisement and then issued a written order denying Defendant's motion to withdraw his plea. This appeal followed.

## III. DISCUSSION

### A. *Standard of Review*

{12} On appeal, we review the trial court's denial of a defendant's motion to withdraw his guilty plea for an abuse of discretion. *See State v. Jonathan B.*, 1998-NMSC-003, ¶ 7, 124 N.M. 620, 954 P.2d 52. In this context, a trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error by accepting a plea

that is not knowingly and voluntarily given. *See State v. Garcia,* 1996–NMSC–013, 121 N.M. 544, 546, 915 P.2d 300, 302. Where, as here, a defendant is represented by an attorney during the plea process and enters a plea upon the advice of that attorney, the voluntariness and intelligence of the defendant's plea generally depends on whether the attorney rendered ineffective assistance in counseling the plea. *See Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).[2]

■ {13} We afford de novo review of mixed questions of law and fact concerning the ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Churchman v. Dorsey,* 1996–NMSC–033, ¶¶ 10, 11, 122 N.M. 11, 919 P.2d 1076. In this case, Defendant's claim of ineffective assistance of counsel is premised, in part, on the claim that his attorneys failed to advise him that Prosecutor had a conflict of interest and could be disqualified on that basis. To the extent that disqualification of counsel is an equitable matter that does not depend exclusively on whether a violation of the Rules of Professional Conduct occurred, a ruling on a motion to disqualify is generally reviewed for an abuse of discretion. *See Sanders v. Rosenberg,* 1997–NMSC–002, ¶¶ 8, 10, 122 N.M. 692, 930 P.2d 1144; *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 244, 629 P.2d 231, 320 (1980); *State v. Martinez,* 100 N.M. 532, 536, 673 P.2d 509, 513 (Ct.App.1983). However, the abuse-of-discretion standard does not preclude an appellate court from correcting errors premised on the trial court's misapprehension of the law, *see State v. Elinski,* 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209, or reviewing issues under the doctrine of fundamental error, *see State v. Hodge,* 118 N.M. 410, 418, 882 P.2d 1, 9 (1994) (applying doctrine of fundamental error in context of guilty pleas); *State v. Bencomo,* 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct.App.1990)

(applying same in context of "no contest" plea).

**B. Whether There Was a Conflict of Interest in Prosecuting a Former Client**

■ {14} The trial court concluded that "a conflict was not present in this case." Defendant contends that this conclusion amounts to reversible error because he is a former client of Prosecutor. According to Defendant, Prosecutor should have been disqualified because she had a conflict of interest stemming from her prior representation of him, and he should have been allowed to withdraw his guilty plea because Prosecutor was not disqualified. The State's position is that there was no conflict of interest to support disqualification, or if there was a conflict, Defendant waived it when he entered his guilty plea. The parties refer us to the Rules of Professional Conduct to determine whether there is a basis for disqualifying Prosecutor.

{15} Although the Rules of Professional Conduct do not provide the sole grounds for disqualification of counsel, *see United Nuclear,* 96 N.M. at 244, 629 P.2d at 320; *Sanders,* 1997–NMSC–002, ¶ 10, 122 N.M. 692, 930 P.2d 1144, they do provide relevant examples of circumstances which may give rise to the need for disqualification. *See. e.g., State v. Hursey,* 176 Ariz. 330, 861 P.2d 615, 617–18 (Ariz.1993) (en banc) (applying Arizona Rules of Professional Conduct to disqualify attorney from prosecuting former client when prosecution is substantially related to prior representation of that client); *State ex rel. Romley v. Superior Ct.,* 184 Ariz. 223, 908 P.2d 37, 43 (Ariz.Ct.App.1995) (applying Arizona Rules of Professional Conduct to disqualify attorney from participating in prosecution of former client when attorney substantially participated in prior representation as evidenced by receipt of confidential information).

{16} In this case, Defendant points to two specific provisions in the Rules of Profes-

---

**2.** We recognize that there may be exceptions to this rule where, for example, a defendant is incompetent to enter a plea, *see State v. Guy,* 79 N.M. 128, 130, 440 P.2d 803, 805 (Ct.App.1968), or there is a failure to conform to the Rules of Criminal Procedure concerning the acceptance of a guilty plea. *See Garcia,* 1996–NMSC–013, 121 N.M. at 547–49, 915 P.2d at 303–05. However, none of these exceptions are at issue in this case.

sional Conduct to support his assertion that Prosecutor's prior representation of him created a conflict of interest. First, Defendant asserts that Prosecutor had a conflict of interest under Rule 16–111(C) NMRA 1998, which provides in relevant part that "a lawyer serving as a public officer or employee shall not ... participate in a matter in which the lawyer participated personally and substantially while in private practice...." *See* also *ABA Standards for Criminal Justice Prosecution Function and Defense Function* Standard 3–1.3 cmt., at 11 (3d ed.1993) [hereinafter *1993 ABA Standards* ] (applying this rule to prosecutors in criminal cases). Second, Defendant asserts that Prosecutor also had a conflict of interest under Rule 16–109 NMRA 1998, which states that:

A lawyer who has formerly represented a client in a matter shall not thereafter:

A. represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

B. use information relating to the representation to the disadvantage of the former client except as Rule 16–106 [NMRA 1998] would permit with respect to a client or when the information has become generally known.

Rule 16–106 generally prohibits a lawyer from revealing information relating to representation of a client unless the client consents after consultation.

{17} The State asserts that the relevant grounds for determining whether there was a conflict of interest in this case are provided by Rule 16–109 and not Rule 16–111(C). We agree. Rule 16–111(C) applies when the prosecutor participates in the same matter in which he or she participated personally and substantially while in private practice. That is not the situation here. In any event, the protections afforded to former clients still apply to lawyers representing government agencies. *See* Model Rules of Professional Conduct Rule 1.11 cmt. (1993). Hence, we apply Rule 16–109 to determine whether Prosecutor had a conflict of interest that required her disqualification.

{18} In applying Rule 16–109, we note that "[t]he substantial relationship test is the keystone of the law on conflicts of interest involving former clients." *ABA/BNA Lawyers Manual on Professional Conduct* at 51:214 (1992) [hereinafter *ABA/BNA Lawyers Manual* ]; *see also State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569, 572 (W.Va.1993). As explained by the State Bar of New Mexico Advisory Opinions Committee,

[t]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. The rule does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters, but instead involves the realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other. The effect of the [rule], therefore, is to restrict the inquiry to the possibility of disclosure and not whether actual confidences were disclosed.

Advisory Op. 1984–8, at 2 (1984) (citing *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.1978)); *see also* Restatement (Third) of the Law Governing Lawyers § 213 cmt. d(iii) (Proposed Final Draft No. 1, 1996) [hereinafter Restatement] (substantial relationship exists if the current matter involves work lawyer performed for former client or there is substantial risk that representation of present client will involve use of confidential information acquired in the course of representing former client); *cf. People v. Lepe,* 164 Cal.App.3d 685, 211 Cal. Rptr. 432, 434 (Ct.App.1985) (presuming that defendants ordinarily share confidences with attorneys who represent them); *Reaves v. State,* 574 So.2d 105, 107 (Fla.1991) (disqualification required in response to pretrial motion whenever prosecutor formerly represented client in any criminal matter that involved or likely involved confidential communications with that client); *People v. Curry,* 1 Ill.App.3d 87, 272 N.E.2d 669, 673 (Ill. App.Ct.1971) (unnecessary that prosecutor

be guilty of attempt to betray confidence so long as he is placed in position which leaves him open to such charge).

{19} Employing a presumption that confidential information was disclosed in cases that are substantially related serves several important purposes. In particular, employing this presumption will "spare former clients from the self-defeating necessity of having to reveal what confidential information they imparted to their lawyer as a means of making sure (through a disqualification motion) that the lawyer would not use this information to their disadvantage in his representation of another client." *ABA/ BNA Lawyers Manual, supra,* at 51:215; *see also* Restatement, *supra* § 213 cmt. d(iii); *Hamilton,* 430 S.E.2d at 574. By avoiding the necessity of actually disclosing confidential information in order to disqualify an attorney, the presumption increases the assurance of confidentiality that clients need to confide more completely in their attorneys, and thereby increases the efficacy of their attorneys, and representation. *See ABA/ BNA Lawyers Manual, supra,* at 51:206; *Hamilton,* 430 S.E.2d at 574. Such assurance of confidentiality and efficacy of representation are necessary to maintain public trust in the integrity of the judicial process. *See Reaves,* 574 So.2d at 107 (quoting *State v. Fitzpatrick,* 464 So.2d 1185, 1188 (Fla.1985) (Ehrlich, J., dissenting)); *Curry,* 272 N.E.2d at 672 (quoting *People v. Gerold,* 265 Ill. 448, 107 N.E. 165, 177 (Ill.1914)).

{20} At the hearings on his motion to disqualify Prosecutor and withdraw his plea, Defendant presented several authorities to support his assertion that there is a substantial relationship between two matters when the former client's prior conviction in the first matter is used to determine that he is a habitual offender in the second matter. *See State v. Tippecanoe County Ct.,* 432 N.E.2d 1377, 1379 (Ind.1982); *Hursey,* 861 P.2d at 617–18. Prosecutor responded that Rule 16–109(B) does not preclude her from using Defendant's prior conviction to his disadvantage because it is a public record that "has become generally known." Courts in other jurisdictions are divided on this issue. *See* Allen L. Schwartz & Danny R. Veilleux, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused,* 42 A.L.R. 5th 581, 631–41 (1996).

{21} While we cannot say that the trial court erred in considering Prosecutor's use of Defendant's prior convictions in the present case, we believe that other factors are also relevant here. These factors include the amount of time that passed between the prosecution and the prior representations (between one year and three and one-half years), the similarity between the type of charges involved (burglary and conspiracy), and perhaps most importantly, the fact that the charges were resolved through plea bargaining. *Cf. Hamilton,* 430 S.E.2d at 572–73 (adopting majority view that determining substantial relationship requires comparison of "facts, circumstances, and legal issues of the past and present representations"); *ABA/BNA Lawyers Manual, supra,* at 51:215 to 51:216 (intimacy, breadth, and detail of prior relationship may warrant disqualification in subsequent matter); Restatement, *supra* § 213 cmt. d, illus. 3 (same).

{22} Given the tremendous discretion possessed by a prosecutor in the plea bargaining process, a defendant could be seriously prejudiced by the prosecutor's knowledge regarding the defendant's character and conduct acquired in prior representation. For example, the prosecutor could refuse to bargain with a defendant whose danger to society would be apparent from confidential communications during the prior representation. In the present case, we consider it significant that Prosecutor conducted the plea negotiations on the State's behalf after she had been closely involved in counseling Defendant's plea in a prior criminal matter. This situation creates a significant risk that information relating to the prior representation which concerns Defendant's personality, credibility, and negotiating style will be used to his disadvantage in assessing the State's ability to obtain a favorable plea agreement, avoid trial, or otherwise exploit the trust that was developed as a result of the prior representation. *Cf. Lepe,* 211 Cal.Rptr. at 434 (criminal defendant's "personality traits, lifestyle, associations, thought patterns, attitudes—all are eventually known to thought-

ful and prepared counsel."). Such prior knowledge of a former client's credibility or personality also may be used to his or her disadvantage in the prosecuting attorney's assessment of whether or under what terms the former client should be released from detention.

{23} Thus, the specific circumstances of this case suggest a substantial relationship between the matters at issue. Prosecutor admitted that she counseled Defendant's plea of guilty to burglary and conspiracy charges in 1993, continued to represent him on DWI charges in 1995, and later negotiated with Defendant on the State's behalf to obtain his guilty plea on another set of burglary and conspiracy charges in 1996. It is also undisputed that Prosecutor used the prior convictions obtained while she represented Defendant in 1993 to add a habitual offender sentence to the convictions she obtained on the State's behalf in 1996. At the plea hearing, Prosecutor admitted that if the case went to trial, it would involve conflicting testimony between Defendant and another witness, thus making Defendant's credibility as a potential witness a key issue in the case. Finally, at the close of the plea hearing when Defendant requested to be released from detention for a few days to put his affairs in order, Prosecutor commented on his prior history in an attempt to persuade the trial court that Defendant was a flight risk and should not be released.

{24} Under these circumstances, we determine that the trial court erred in concluding that "a conflict was not present in this case." The fact that this case involves a plea agreement, and the exchange of concessions and advantages necessary to such an agreement, does not eliminate or diminish the likelihood or appearance of a conflict of interest, especially when the prosecuting attorney who negotiates the plea agreement previously sat on the opposite side of the table and counseled the defendant's plea in another case concerning similar charges. Had Defendant raised the issue prior to his conviction, the conflict of interest would have provided a basis for disqualifying Prosecutor from participating in the plea negotiations.

## C. *Whether There Was a Knowing, Intelligent, and Voluntary Waiver of the Conflict*

{25} After holding a postconviction evidentiary hearing on the matter, the trial court concluded that Defendant "voluntarily waived his rights and his prior client interest" as part of the "exchange of concessions and advantages between the parties" that is necessarily involved in any plea agreement. The State relies on this conclusion to support its contention that Defendant waived the conflict of interest that existed as a result of Prosecutor's prior representation of him. To establish that a waiver occurred, the State also relies on general language in the plea agreement regarding Defendant's waiver of his rights, and Defendant's responses to the questions that the trial court posed during the plea hearing to assess the voluntariness and intelligence of his guilty plea.

{26} We agree with the State that, as a general rule, a conflict of interest or disclosure of information relating to a prior representation may be waived by a former client after consultation. *See* Rules 16–106, 16–109. We also agree that a knowing and voluntary guilty plea generally carries with it a waiver of the right to subsequently raise issues that were not specifically reserved as part of the plea agreement, *see* Hodge, 118 N.M. at 414, 882 P.2d at 5, and a defendant generally may not withdraw a guilty plea as a matter of right after sentencing unless the defendant proves that the withdrawal is necessary to correct a manifest injustice, *see* Rule 5–304 NMRA 1998 cmt. (quoting *ABA Standards Relating to Pleas of Guilty* (Approved Draft 1968)).

{27} In this case, Defendant asserts that withdrawal of his plea is necessary to correct a manifest injustice because Defense Counsel and Assistant Defense Counsel rendered ineffective assistance in counseling his plea. *See* Hill, 474 U.S. at 57, 106 S.Ct. 366. Generally, the standard for proving ineffective assistance of counsel follows the two-part test derived from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* Hill, 474 U.S. at 57, 106 S.Ct. 366; *State v. Crain,* 1997–NMCA–101, ¶ 24, 124 N.M. 84, 946 P.2d 1095. To prevail

under this test, Defendant "must prove that defense counsel did not exercise the skill of a reasonably competent attorney and that this incompetent representation prejudiced the defendant's case, rendering the trial court's results unreliable." *State v. Lopez,* 122 N.M. 63, 70, 920 P.2d 1017, 1024 (1996).

{28} Whether to consent to his former attorney's representation of an adverse party under Rule 16–109 requires a decision by Defendant; it is not within the realm of trial strategy and tactics that may be determined by his attorney. *Cf. 1993 ABA Standards, supra* Standard 4–5.2 (certain decisions regarding conduct of case are ultimately for the accused to make after consultation with counsel); Restatement, *supra* § 33 cmt. c (authority reserved to client). Hence, the conduct of Defense Counsel and Assistant Defense Counsel which forms the basis for Defendant's claim of ineffective assistance of counsel is their failure to competently advise him regarding his decision to waive the conflict of interest and accept Prosecutor's plea offer in lieu of disqualifying Prosecutor from the plea negotiations. *See Hamilton,* 430 S.E.2d at 575 n. 8 (in criminal case where prosecutor is deemed to have conflict of interest, defendant's waiver not valid absent advice of counsel); *cf. McMann v. Richardson,* 397 U.S. 759, 772, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (guilty plea not subject to collateral attack "unless the defendant was incompetently advised by his attorney"); *State v. Ciarlotta,* 110 N.M. 197, 201, 793 P.2d 1350, 1354 (Ct.App.1990) (although decision whether to proceed with a jury is a tactical one, failure of defense counsel to advise defendant of his right to a jury may constitute ineffective assistance of counsel).

{29} There is no indication that Defense Counsel or Assistant Defense Counsel ever advised Defendant that he could seek to disqualify Prosecutor from the plea negotiations based on her prior representation of him. Indeed, Defendant's attorneys did not make any inquiries concerning Defendant's allegation that Prosecutor had represented him in the past. Defense Counsel admitted that she did not even know that Prosecutor had represented Defendant in the 1993 felony case which was used to enhance his sentence in the present case.

{30} We find it difficult to understand why a defense attorney under the facts presented in this case, would not make at least some minimal effort to discover the scope of Prosecutor's prior. representation and to advise Defendant concerning his right to disqualify Prosecutor from the plea negotiations. *Cf. State v. Dartez,* 1998–NMCA–009, ¶¶ 28–34, 124 N.M. 455, 952 P.2d 450 (finding no plausible reason for a defense attorney's failure to object to improper comments by prosecuting attorney during closing argument). Defense Counsel explained her decision not to inquire about the conflict by stating her belief that Defendant wanted to proceed with plea negotiations. However, under the specific circumstances presented here, "[t]he duty to investigate exists regardless of … the accused's stated desire to plead guilty." *1993 ABA Standards, supra* Standard 4–4.1(a); see also *ABA Standards for Criminal Justice Pleas of Guilty* Standard 14–3.2 cmt. (2d ed.1980). "Failure to make adequate pretrial investigation and preparation may also be grounds for finding ineffective assistance of counsel." *1993 ABA Standards, supra* Standard 4–4.1 cmt., at 183. For these reasons, we determine that Defendant has made a prima facie showing that his attorneys' conduct fell below the standard of a reasonably competent attorney.

{31} We next consider whether Defendant established a prima facie case that he was prejudiced by his attorneys' failure to advise him of Prosecutor's conflict of interest and his right to disqualify Prosecutor on that basis. In certain contexts, the prejudice resulting from a failure to meet the standard of a reasonably competent attorney will be presumed. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. For example, it is reasonable to maintain a fairly rigid rule of presumed prejudice when the ineffective assistance involves a defense attorney with an actual conflict of interest stemming from multiple representation. *See id.; Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Churchman,* 1996–NMSC–033, ¶¶ 12, 13, 122 N.M. 11, 919 P.2d 1076. However, the present case does not involve such an

actual conflict of interest on the part of Defense Counsel or Assistant Defense Counsel.

{32} To show prejudice resulting from ineffective assistance in counseling a guilty plea, a defendant must establish "a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. In this context, there are no mechanical rules for determining prejudice. *See Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. Rather, the focus is on whether there has been such a breakdown in the adversarial process as to undermine the fundamental fairness of the proceeding whose result is being challenged. *See id.*

{33} In the present case, Defendant alleges circumstances that might support the conclusion that he placed particular emphasis on Prosecutor's prior representation of him in deciding whether or not to accept Prosecutor's plea offer. However, the record is unclear as to whether Defendant would have exercised his right to disqualify Prosecutor and proceed to trial if he had been competently advised of his right to do so. The trial court apparently based its ruling on how favorable the plea agreement was to Defendant rather than the underlying issue of whether Defendant would have rejected Prosecutor's plea offer altogether and proceeded to trial if he had been competently advised by counsel. Under these circumstances, we believe the proper course is to remand to the trial court for an evidentiary hearing to determine if Defendant was prejudiced by the deficient performance of his attorneys in counseling his plea. *See Dartez,* 1998–NMCA–009, ¶ 34, 124 N.M. 455, 952 P.2d 450.

### D. *Whether Defendant Was Properly Advised Regarding the Habitual Offender Sentence*

■ {34} On remand, the court need not reconsider Defendant's additional claim that the trial court failed to properly advise him of his rights with respect to the habitual offender sentence. In his plea agreement, Defendant admitted to being the same person who was convicted of the prior felonies which formed the basis for sentencing him as a habitual offender. Further, at the plea hearing, the trial court properly advised Defendant of his right to be presumed innocent and to have a trial with respect to the habitual offender charge. Therefore, we conclude that the trial court properly advised Defendant of his rights concerning the habitual offender sentence. *See* NMSA 1978, § 31–18–20 (1983).

### III. CONCLUSION

{35} For the foregoing reasons, we vacate the trial court's order denying Defendant's motion to withdraw his plea of guilty to charges of burglary and conspiracy and remand for further proceedings consistent with this opinion.

{36} **IT IS SO ORDERED.**

HARTZ, C.J., and FLORES, J., concur.

