# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-005

Filing Date: January 12, 2015

Docket No. 34,311

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

CESAR FAVELA,

       Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jorge A. Alvarado, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Chief Justice.**

**{1}**    This case concerns the weight to be given to two types of evidence in evaluating prejudice in immigration-related ineffective assistance of counsel claims: judicial warnings of immigration consequences and the strength of the State's evidence against the defendant. Defendant Cesar Favela filed a motion requesting permission to withdraw his guilty plea, alleging ineffective assistance of counsel after his attorney failed to advise him that his guilty plea would result in deportation. The district court denied the motion. The Court of Appeals reversed, holding that where a defendant's attorney fails to advise that defendant of the

1

specific immigration consequences of entering a guilty plea, a warning of such consequences by a judge during a plea colloquy does not, by itself, cure the prejudice suffered by the defendant as a result of the attorney's deficient performance and should only be afforded minimal weight in the analysis of prejudice. The State appealed.

**{2}** We affirm the Court of Appeals' holding that a judge's warning of such consequences during a plea colloquy cannot alone cure the prejudice caused by the attorney's deficient performance, and, accordingly, we affirm the Court of Appeals' decision to reverse and remand the district court's order. *State v. Favela*, 2013-NMCA-102, ¶ 1, 311 P.3d 1213, *cert. granted*, 2013-NMCERT-010. However, we decline to go so far as to declare that any particular type of evidence should be afforded minimal weight in deciding all claims of immigration-related ineffective assistance of counsel. Rather, we maintain that the determination of the weight to be afforded to evidence of prejudice is appropriately made on a case-by-case basis.

## I.    BACKGROUND

**{3}** Defendant, who is a Mexican national and, at the time, was a lawful permanent resident of the United States, pleaded guilty to four counts of aggravated battery with a deadly weapon contrary to NMSA 1978, Section 30-3-5(C) (1969) and one count of driving while under the influence of intoxicating liquor, his second conviction contrary to NMSA 1978, Section 66-8-102(F) (2003). *Favela*, 2013-NMCA-102. At the plea and disposition hearing, during the plea colloquy, the district judge asked Defendant whether he had read the documents related to his plea agreement and discussed them with his attorney, and Defendant testified that he had. The district judge then asked Defendant if he understood the charges to which he was pleading guilty and the rights he would be giving up as a result of the plea, and Defendant testified that he understood. Before the judge accepted Defendant's plea, the following exchange occurred:

> Judge: Counsel, I just noticed the place of birth on this form. Is there an immigration consequence in this case?
>
> Defense Counsel: There will be. He's here legal and everything, he has his paper documentation and everything, but more than likely will have a great consequence on . . . his papers being taken away.
>
> Judge: Mr. Favela, before I accept the plea and approve it at this point, I want to be sure you understand, as your attorney said, that a conviction will have an effect on your immigration status and that effect would be deportation, which is now called removal, exclusion from the United States and denial of naturalization under the laws of the United States. Do you understand that, sir?
>
> Defendant: Yes, your Honor.

2

Judge: All right, and is it still your desire to enter your plea of guilty, sir?

Defendant: Yes, your Honor.

Judge: All right, the court then approves that.

The district court accepted Defendant's guilty plea.

**{4}** Defendant was sentenced to twelve years and 364 days imprisonment, to be followed by two years of parole and a $1,000 fine. All of his prison sentence except three years was suspended; those three years were to be followed by five years of supervised probation and parole. With good time credit, Defendant served a total of twenty-one months at the New Mexico Department of Corrections. Upon his release, Defendant was immediately taken into the custody of the U.S. Immigration and Customs Enforcement (ICE) and detained in the Otero County Processing Center to await removal.

**{5}** Shortly after being taken into ICE custody, Defendant, through new counsel, filed a motion for relief from judgment or order and a request for an evidentiary hearing pursuant to Rule 1-060 NMRA. Defendant asked the district court for an order allowing the withdrawal of Defendant's guilty plea on the grounds that his trial attorney did not inform him of the immigration consequences of pleading guilty. Therefore, Defendant maintained that the guilty plea did not constitute a willful, knowing, and intelligent waiver of his rights. On July 6, 2011, the district court issued an order summarily dismissing Defendant's motion and request for hearing. Stating that it was "[t]aking as true the factual allegations in the motion . . . for the purposes of this order," the district court's findings of fact included:

5. The defendant's trial counsel did not explain to the defendant prior to the plea hearing that he would certainly be deported as a result of his plea and conviction in this case.

6. Prior to accepting the defendant's guilty pleas, defense counsel stated to the Court and the Court itself admonished the defendant that his plea and conviction in this case would surely result in his being deported. The defendant personally told the Court that he understood that he would be deported.

The district court's conclusions of law included:

5. The defendant must demonstrate, not only that his attorney's assistance was deficient in failing to advise him of the certainty of deportation if convicted, but that he was prejudiced by his attorney's ineffective action or omission in that he would have gone to trial had he been adequately informed.

3

6.      In this case, the defendant was clearly made aware prior to entering his guilty pleas that deportation would be an inevitable result of the conviction. His decision to plead guilty in the face of this certainty was knowing, intelligent and voluntary. His guilty plea cannot now be set aside.

(Citations omitted.) Accordingly, the district court dismissed Defendant's motion.

**{6}**     Defendant filed a motion to reconsider the dismissal and a supporting affidavit. The district court held a hearing on the motion to reconsider on November 21, 2011. Defendant testified that his trial counsel did not advise him that he would be deported as a result of pleading guilty. Defendant testified that he entered the guilty plea because his attorney told him to do so. Specifically, Defendant testified that he entered the plea because his attorney had instructed him to "just say yes, yes, yes and plead guilty 'cause we already had signed [the plea agreement] and so nothing was going to change." Additionally, Defendant testified that he did not understand what the district judge presiding over his plea hearing was saying to him and that he would not have pleaded guilty had he known it would result in deportation because "[his] whole life is here in the United States." Nonetheless, the district court denied Defendant's motion to reconsider "for the reasons set forth in the July 6, 2011 Order" without further explanation.

**{7}**     Defendant appealed the denial of his motion to the Court of Appeals. *Favela*, 2013-NMCA-102, ¶ 1. In resolving the issue, the Court of Appeals issued two holdings concerning "what weight, if any, should be given to the trial court advising Defendant during the plea colloquy that he would be deported." *Id*. ¶ 23. The Court of Appeals held that "a court's warning or advisement to a defendant regarding possible immigration consequences of accepting a plea is never, by itself, sufficient to cure the prejudice that results from ineffective assistance of counsel in that regard." *Id*. ¶ 26. Second, the Court held that "judicial statements made during the plea colloquy about the immigration consequences of a [defendant's] plea do not cure counsel's deficient representation and should only be given minimal weight in determining whether a defendant has demonstrated prejudice under *Strickland v. Washington*, 466 U.S. 668, 695-98 (1984)." *Id*. ¶ 1. Additionally, the Court of Appeals noted:

> Although our courts have recognized a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty . . . , when viewed in light of our acknowledgment that immigration consequences may often be the overriding concern of a criminal defendant, the strength of the evidence against a defendant is less indicative of whether the defendant may have taken a chance at trial.

*Id*. ¶ 30 n.4 (internal quotation marks and citation omitted). The Court of Appeals reversed the district court's dismissal of Defendant's motion for reconsideration and remanded to the district court for further proceedings. *Id*. ¶¶ 30-31.

4

**{8}** The State appealed to this Court, arguing that the Court of Appeals erred in "holding that judicial statements made during a plea colloquy about the immigration consequences of a guilty plea, as well as the strength of the State's evidence against a defendant, should only be afforded minimal weight in evaluating an immigration-related ineffective assistance of counsel claim."

## II.     DISCUSSION

### A.     Standard of review

**{9}** "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Paredez*, 2004-NMSC-036, ¶ 5, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Garcia*, 1996-NMSC-013, ¶ 7, 121 N.M. 544, 915 P.2d 300. "Where, as here, a defendant is represented by an attorney during the plea process and enters a plea upon the advice of that attorney, the voluntariness and intelligence of the defendant's plea generally depends on whether the attorney rendered ineffective assistance in counseling the plea." *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323. "We afford de novo review of mixed questions of law and fact concerning the ineffective assistance of counsel." *Id*. ¶ 13.

### B.     Immigration-related ineffective assistance of counsel claims

**{10}** New Mexico has adopted the United States Supreme Court's holding in *Strickland*, 466 U.S. at 687, for evaluating a claim of ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. *See, e.g.*, *Paredez*, 2004-NMSC-036, ¶ 13. Under the two-prong test in *Strickland*, in order to prevail on a claim of ineffective assistance, "a defendant must show: (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" *Paredez*, 2004-NMSC-036, ¶ 13 (quoting *Strickland*, 466 U.S. at 687). A defense attorney's failure to advise a client of the "specific immigration consequences of pleading guilty, including whether deportation would be virtually certain" renders that attorney's performance deficient, which satisfies the first prong of the *Strickland* test. *Paredez*, 2004-NMSC-036, ¶ 19. Here, the district court found that "trial counsel did not explain to the defendant prior to the plea hearing that he would certainly be deported as a result of his plea and conviction in the case." Thus, the first prong of Defendant's ineffective assistance of counsel claim was satisfied. *See id*. Having established the first prong of the *Strickland* test, we turn our focus to the second prong of the analysis concerning prejudice.

**{11}** In cases involving plea agreements, prejudice is proven where the defendant demonstrates "that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Id*. ¶ 20 (alteration

in original) (internal quotation marks and citation omitted). The defendant "is not required to prove that a trial would have resulted in acquittal," but rather must show that with sufficient legal advice from his or her counsel, "there is a reasonable probability that the defendant would have gone to trial instead of pleading guilty or no contest." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

## C.    A judicial warning of immigration consequences cannot, by itself, cure prejudice

**{12}**    After establishing that the first prong was satisfied, the district court correctly recognized that Defendant was also required to prove that he was prejudiced by counsel's deficient performance. *See Paredez*, 2004-NMSC-036, ¶ 13. In the findings and conclusions contained in its order, the district court did not cite any factual basis for its decision to deny Defendant's motion other than the exchange that occurred between the district judge, Defendant, and defense counsel during the plea colloquy. Because the first prong of the test was established by a finding that defense counsel failed to advise Defendant of the immigration consequences of his plea, the district court's denial of Defendant's motion was apparently based on lack of prejudice. In determining that Defendant did not suffer prejudice, the district court relied solely upon the admonition made to Defendant during the plea colloquy by the district judge who accepted the plea.

**{13}**    Although this Court has repeatedly found that a judicial warning is insufficient to cure an attorney's deficient performance under the first prong of the *Strickland* test, we have not yet considered such warnings in evaluating prejudice. *E.g.*, *Ramirez v. State*, 2014-NMSC-023, ¶ 17, 333 P.3d 240 ("[W]e have held in other cases where counsel has failed to properly advise a client during the plea entry phase that not even a record of the court's adherence to the plea colloquy cures the ineffective assistance of counsel."); *Paredez*, 2004-NMSC-036, ¶ 12 ("[A] sufficient advisement from the trial court regarding the immigration consequences of a defendant's plea does not entail that [the defendant] has received effective assistance of counsel in evaluating or responding to such advisements." (second alteration in original) (internal quotation marks and citation omitted)). The Court of Appeals' opinion in this case extended this line of reasoning to its analysis of prejudice, noting that "[e]ven where warnings [by judges] are more specific, judges, given their position, cannot gauge defendants' priorities, counsel defendants on how to proceed, or use the information strategically in negotiating pleas." *Favela*, 2013-NMCA-102, ¶ 27 (internal quotation marks and citation omitted). Essentially, the Court of Appeals recognized, "[a] defendant who has been 'advised' of the immigration consequences of his [or her] plea by the trial court during the plea colloquy has not been provided the same assistance of counsel as an attorney who has represented a client with knowledge that the defendant faced possible deportation." *Id.* Further, the Court of Appeals "note[d] concerns with the efficacy of immigration warnings given by the trial court," adding that a "nervous defendant taking a plea in front of a criminal judge will rarely be able to meaningfully process the many formalized warnings included in

the plea colloquy." *Id*. ¶ 28 (internal quotation marks and citation omitted).

**{14}** It is imperative that every defendant entering into a plea agreement which could result in immigration consequences possesses a clear understanding of those immigration consequences in order to protect both the rights of the pleading defendant and to avoid the uncertainty resulting from post-conviction challenges. By first determining that a defendant understands the consequences of pleading guilty before accepting a plea agreement, district court judges serve a crucial gate-keeping function, allowing admittance of only those plea agreements which are entered into knowingly. Therefore, a district court judge's determination of a defendant's understanding of the immigration consequences of entering a plea is crucial to the fairness and finality of the plea process, and we take this opportunity to give additional guidance to district court judges when making such determinations. It is within the district court's discretion to determine, in light of the circumstances of each case, which, if any, of these steps will aid in assessing whether or not the defendant possesses the requisite understanding to knowingly enter into a plea agreement.

**{15}** While Forms 9-406 to -408C NMRA provide guidance in conducting a plea proceeding, a judge is not limited to merely reading the language used on the forms and asking the defendant whether the defendant understands. An effective inquiry into a defendant's actual understanding of immigration consequences may require more than simple "yes" answers on the part of the defendant, who may or may not be able to fully process the formalistic questions and instructions from the judge under the pressure of being questioned during a plea colloquy. We encourage judges to carefully inquire of the defendant and the defendant's attorney, on the record, whether the two discussed the potential immigration consequences and what defendant's actual understanding of those consequences is. By the same token, we encourage defense attorneys to thoroughly discuss any potential immigration consequences with their clients so that their clients are able to respond knowingly to the judge's questioning. If a judge has any doubts concerning the sufficiency of the defendant's understanding of the immigration consequences of a guilty plea, the judge may consider taking a recess and giving both client and counsel an opportunity to conference privately to discuss the specific consequences. Following such an opportunity for discussion, if the defendant and defense counsel indicate that the defendant still wishes to enter into the plea agreement, the judge can again ask the defendant to confirm on the record the defendant's understanding of potential consequences. Ultimately, a district court judge should not accept a plea agreement unless that judge determines, on the record, that the defendant has an adequate understanding of the potential adverse immigration consequences resulting from that plea agreement and that in light of those consequences, the defendant still wishes to enter into that plea agreement.

**{16}** We agree with the Court of Appeals' recognition that "judicial statements made during the plea colloquy about the immigration consequences of a plea do not cure counsel's deficient representation" when evaluating whether or not a defendant has proven the first prong of the *Strickland* test. *Favela*, 2013-NMCA-102, ¶ 1. We also agree that because such an advisement by a judge cannot render sufficient an attorney's otherwise deficient

7

performance in failing to advise his client of the immigration consequences of his plea, the same advisement cannot, *by itself*, cure the prejudice created by such a failure to advise. *See id*. ¶ 26. Here, the district court's order denying Defendant's motion relied solely upon the district judge's advice to Defendant to find that Defendant was not prejudiced by his attorney's failure to advise him of the immigration consequences of his guilty plea. The order did not indicate whether or not there was additional factual support for its decision to deny the motion. For these reasons, we affirm the Court of Appeals' decision to reverse and remand the matter back to the district court.

**D.   The weight afforded to specific types of evidence of prejudice shall be determined on a case-by-case basis**

**{17}**    The Court of Appeals explicitly held that "judicial statements made during the plea colloquy about the immigration consequences of a plea . . . should only be given minimal weight in determining whether a defendant has demonstrated prejudice under *Strickland*." *Favela*, 2013-NMCA-102, ¶ 1. Additionally, in considering the weight to be afforded to the strength of the State's evidence against a defendant, the Court of Appeals noted that "when viewed in light of our acknowledgment that immigration consequences may often be the overriding concern of a criminal defendant, the strength of the evidence against a defendant is less indicative of whether the defendant may have taken a chance at trial." *Id*. ¶ 30 n.4.

**{18}**    The State argues that the Court of Appeals erred in holding that these two types of evidence should be afforded minimal weight in the prejudice analysis of an immigration-related ineffective assistance of counsel claim. Defendant argues that the Court of Appeals decided the matter correctly under the law. We conclude that the appropriate weight to be afforded to any evidence of prejudice cannot be determined in the abstract, but must be evaluated in light of the circumstances of the individual case in which the evidence is presented.

**{19}**    There is no formulaic test for determining whether a defendant has demonstrated prejudice. Such a determination is made on a case-by-case basis, in light of the facts of that particular case. *See Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000) ("As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case."); *see also Patterson*, 2001-NMSC-013, ¶ 29 ("We have identified two types of additional evidence that are pertinent to the analysis *in this case*.") (emphasis added); *Barnett*, 1998-NMCA-105, ¶ 32 ("[T]here are no mechanical rules for determining prejudice."). This Court has noted that in assessing whether a defendant has been prejudiced by an attorney's deficient performance, "courts are reluctant to rely solely on the self-serving statements of defendants." *Patterson*, 2001-NMSC-013, ¶ 29. Thus, a defendant will often need to provide additional, objective evidence of prejudice. *Id*. For example, our courts typically consider the strength of the State's evidence against the defendant and a defendant's pre-conviction statements and actions, such as assertions of innocence or statements of intent to go to trial. *Id*. ¶¶ 30-31.

8

**{20}** An inquiry into the objective evidence of prejudice is not limited to the strength of the State's evidence or the defendant's pre-conviction statements and actions because such objective evidence will be sparse in many cases. *State v. Carlos*, 2006-NMCA-141, ¶ 21, 140 N.M. 686, 147 P.3d 897. As a result, our analysis may require turning to "what the defendant would have been motivated to do if given accurate information." *Id*. In *Carlos*, the Court of Appeals reasoned that "Defendant's testimony that he has lived in the United States virtually his whole life, having been brought to [t]his country right after he was born, may have been an important factor in his decision whether to enter a plea." *Id.* Therefore, the Court of Appeals held that it was appropriate to consider such testimony when evaluating prejudice. *Id.* ¶¶ 22-23.

**{21}** Because every defendant and every case present a variety of interests and circumstances, it is inappropriate to declare that the strength of the State's evidence against a defendant or judicial statements during a plea colloquy should necessarily be afforded minimal weight in assessing prejudice. In making such an assessment, it is appropriate for courts to consider the degree to which the record contains sworn testimony by the defendant and defense counsel that strongly indicates that the defendant knowingly and voluntarily entered into a plea agreement despite potential adverse immigration consequences. Therefore, we decline to endorse the Court of Appeals' holdings assigning minimal weight to such evidence, and we clarify that the weight to be given to a particular type of evidence of prejudice will depend on the particular facts of the case in which the evidence is presented.

## III.   CONCLUSION

**{22}** The district court's order does not indicate that it considered factors other than judicial statements during the plea colloquy to find that Defendant was not prejudiced by his attorney's failure to advise him that his guilty plea would lead to his deportation. Because such judicial statements alone cannot cure prejudice, we affirm the Court of Appeals' decision to reverse the district court's denial of Defendant's motion. Additionally, we clarify that the weight to be afforded to particular types of evidence of prejudice shall be determined on a case-by-case basis in light of the particular facts and circumstances of each individual case. We remand the matter to the district court for further proceedings consistent with this opinion.

**{23}   IT IS SO ORDERED.**

 

 

_____

**BARBARA J. VIGIL, Chief Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**