# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  __December 22, 2014__

**NO. 32,161**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALEX TEJEIRO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Defendant Alex Tejeiro appeals from the district court's ruling on his motion to set aside his guilty plea. He argues that he received ineffective assistance from his attorney, who failed to inform him of the immigration consequences of his plea. We agree. Accordingly, we reverse.

**BACKGROUND**

{2}     Defendant, a Cuban immigrant, pleaded guilty to a single count of drug trafficking in November 2003. He received a conditional discharge, which he completed successfully, and the matter was dismissed with prejudice on August 13, 2007. He subsequently learned that his plea had possible immigration consequences and filed a motion to set aside his guilty plea on the grounds that his attorney had been ineffective in failing to inform him of that fact. His motion was filed in March 2011. Because the entry of the plea and the motion to withdraw it were heard by different judges, hereafter the court that accepted the guilty plea will be referred to as the "trial court," and the court that heard Defendant's motion to withdraw as the "district court."

{3}     The district court initially denied Defendant's motion, declining to apply *Paredez* retroactively to his plea agreement, which occurred the year before *Paredez*

was decided. *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799. The district court later reconsidered and set an evidentiary hearing to investigate the merits of Defendant's claim. At that hearing, the district court again denied Defendant's motion, stating that Defendant's counsel was ineffective under *Paredez* but that Defendant had not been prejudiced by his counsel's incompetence in accepting the guilty plea. Defendant appealed.

**DISCUSSION**

{4} When a defendant moves to withdraw his guilty plea, the district court's denial of that motion is reviewed for abuse of discretion. *State v. Carlos*, 2006-NMCA-141, ¶ 9, 140 N.M. 688, 147 P.3d 897. An abuse of discretion occurs when a district court's ruling is clearly erroneous or "based on a misunderstanding of the law[,]" *State v. Sotelo*, 2013-NMCA-028, ¶ 37, 296 P.3d 1232, or when the court ignored "undisputed facts [that] establish[ed] that the plea was not knowingly and voluntarily given." *Paredez*, 2004-NMSC-036, ¶ 5 (internal quotation marks and citation omitted).

{5} The voluntariness of a guilty plea depends on whether counsel performed " 'within the range of competence demanded of attorneys in criminal cases.' " *Id.* ¶ 13 (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)) An otherwise valid plea can thus be undermined by ineffective assistance from counsel. *Garcia v. State*,

2010-NMSC-023, ¶ 46, 148 N.M. 414, 237 P.3d 716. Indeed, we have found that when a defendant enters a plea upon the advice of his attorney, "the voluntariness and intelligence of the defendant's plea generally *depends* on whether the attorney rendered ineffective assistance in counseling the plea." *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323 (emphasis added). As a result, we must assess a motion of this kind on the merits of its claim of ineffective assistance of counsel; such claims are mixed questions of law and fact, and are reviewed de novo. *Id.* ¶ 13.

{6}     The United States Supreme Court has established a two-prong inquiry for determining whether a defendant received ineffective assistance of counsel: (1) the trial counsel's performance fell below the objective standard of reasonability, and (2) counsel's incompetence prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The defendant must demonstrate the satisfaction of both prongs to prove that his plea was not knowing and voluntary and should be set aside.

**A.     Defendant's Counsel Was Incompetent Under *Paredez***

{7}     Our Supreme Court has recognized the paramount importance of informing defendants of immigration consequences stemming from any guilty pleas. *Paredez*, 2004-NMSC-036. A defendant's attorney has "an affirmative duty" to determine the

specific risk of deportation for his client and to inform his client of the possible impact on his immigration status if he accepts a guilty plea. *Id.* ¶ 1. If an attorney provides incorrect advice or misrepresents the consequences of a plea to his client, his performance is objectively unreasonable under *Strickland*; we require "a definite prediction as to the likelihood of deportation based on the crimes to which a defendant intends to plead and the crimes listed in federal law for which a defendant can be deported." *Carlos*, 2006-NMCA-141, ¶ 14. Additionally, the Supreme Court concluded that "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance." *Paredez*, 2004-NMSC-036, ¶ 16. An attorney who failed to meet his affirmative burden in providing his client with information about deportation risks would thus necessarily satisfy the first prong of the *Strickland* analysis. *Paredez*, 2004-NMSC-036, ¶ 16.

{8} The United States Supreme Court has also confirmed a defendant's right to be informed of specific immigration consequences that may stem from guilty pleas, but has not done so as broadly as New Mexico. *State v. Favela*, 2013-NMCA-102, ¶ 18, 311 P.3d 1213, *cert. granted*, 2013-NMCERT-010, 313 P.3d 251. In *Padilla v. Kentucky*, the United States Supreme Court held that the duty to inform a defendant of immigration consequences arises when "the deportation consequence is truly clear[.]" 559 U.S. 356, 369 (2010). We have established more stringent requirements

4

for defense attorneys, requiring them to inform their clients of consequences short of deportation and to provide guidance even in cases in which implications for immigration status are not "truly clear." *Favela*, 2013-NMCA-102, ¶ 18.

{9} *Paredez* was decided in 2004, a year after Defendant pleaded guilty. We have since concluded that the standards regarding ineffective assistance of counsel outlined in *Paredez* apply retroactively. *State v. Ramirez*, 2012-NMCA-057, ¶ 5, 278 P.3d 569, *aff'd sub. nom. Ramirez v. State*, 2014-NMSC-023, 333 P.3d 240. These standards are thus applicable to Defendant's guilty plea.

{10} Applying *Paredez*, we review the record for evidence that Defendant was given appropriate advice regarding the potential impact of a guilty plea on his immigration status. We agree with the district court that such evidence is "[c]learly absent." Defendant insisted in his own testimony that he had never been informed of the risk of deportation or other possible immigration consequences. His attorney was required to provide him with such information, even for those collateral consequences short of clear deportation risk. *Favela*, 2013-NMCA-102, ¶ 18. He failed to do so.

{11} The record does contain the suggestion that both the trial court and defense counsel wrongly believed the conditional discharge would address deportation concerns. Contemplating the consequences to Defendant if he was "a citizen of another country," the trial court informed him that he faced possible immigration

consequences in case of "*a conviction on this charge*, especially a deferred or suspended sentence[.]" (emphasis added).  It then elected to release Defendant on a conditional discharge for a period of five years, and informed Defendant that if he successfully completed probation "the charge will be dismissed and you honestly can tell the world that you do not have the felony conviction[.]"  The district court commented that there was a "global understanding at th[e] time" of Defendant's plea that successful completion of a conditional discharge would allow him to avoid immigration consequences.  Defendant later testified that he too operated under this mistaken belief.  This understanding was not correct.  *See* 8 U.S.C. § 1101(a)(48)(A)(i) (2012).

{12}    The trial court's mistaken beliefs as to the immigration consequences for Defendant may account for counsel's failure to provide accurate advice—but it does not excuse it.  *Carlos*, 2006-NMCA-141, ¶ 14.  Defendant did indeed face possible deportation to Cuba as a result of his guilty plea, irrespective of whether he was afforded a conditional discharge, and it was incumbent on his attorney to know and inform him of that.  *Paredez*, 2004-NMSC-036, ¶ 1; *see* 8 U.S.C. § 1101(a)(48)(A)(i) (incorporating guilty pleas into the definition of "conviction" for immigration purposes, even if no conviction arises under state law).

6

{13} For these reasons, the district court correctly found Defendant's attorney incompetent under the first prong of *Strickland*.

**B.     Defendant Was Prejudiced by Ineffective Counsel**

{14} When an attorney fails to advise his client of the specific immigration consequences of his case, it satisfies the *Strickland* standard "if the defendant suffers prejudice by the attorney's omission." *Paredez*, 2004-NMSC-036, ¶ 19. In order to demonstrate such prejudice, a defendant must show that the outcome of the plea process was affected by his counsel's deficient performance. *Id.* ¶ 20. Our recent jurisprudence adopts "a broad approach to how a defendant can demonstrate prejudice." *Favela*, 2013-NMCA-102, ¶ 20. According to the United States Supreme Court in *Padilla*, the petitioner need only show "that a decision to reject the plea bargain would have been rational under the circumstances." 559 U.S. at 372. This approach, which is in keeping with New Mexico law, contemplates not merely the possibility of success at trial, but also the opportunity for renegotiation of the plea; it thus focuses on the rationality of rejecting the plea offer rather than the State's evidence or a defendant's maximum exposure compared to the actual offer. *Favela*, 2013-NMCA-102, ¶ 21.

{15} A defendant's testimony may comprise part of the evidence for his claim of prejudice, but generally the claim cannot rest solely on uncorroborated self-serving

7

statements. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 29, 130 N.M. 179, 21 P.3d 1032. Corroborating evidence may include pre-conviction statements or actions that indicate the defendant's preferences or intentions. *Id.* ¶ 30. A defendant's behavior after the plea has been entered may also corroborate his statements, e.g. if he acts quickly to withdraw his acceptance of the plea agreement upon learning of immigration consequences. *Paredez*, 2004-NMSC-036, ¶ 22. Our courts have placed no limit on the types of relevant evidence a defendant may provide to demonstrate that he would have rejected the plea if given appropriate advice. *State v. Edwards*, 2007-NMCA-043, ¶ 36, 141 N.M. 491, 157 P.3d 56. This portion of the *Strickland* analysis cannot be made according to "mechanical rules," but must incorporate a variety of factors in order to determine what effect counsel's incompetent assistance may have had. *Barnett*, 1998-NMCA-105, ¶ 32.

{16} The district court's analysis in this case focused on three factors: (1) the absence of pre-conviction statements in which Defendant "maintained his innocence" or expressed a "desire[] to fight the charges and take the case to trial[,]" (2) the benefits of the plea, and (3) the strength of the State's case against Defendant. It did not determine whether Defendant's testimony was merely self-serving or not and limited its evaluation of corroboration to particular types of pre-conviction evidence. It also placed inappropriate emphasis on the strength of the State's case and the

8

probable similarity of result if Defendant had chosen to exercise his trial rights. Because *Favela*, in which this Court clarified how a defendant might demonstrate prejudice, was decided in 2013, the district court lacked the benefit of this clarification at the time of its decision in 2012, and thus improperly relied on these factors, particularly the strength of the State's case, in its decision. *Favela*, 2013-NMCA-102, ¶ 20.

{17} Guided by *Padilla* and *Favela*, we review the record for a demonstration of prejudice. There are several factors in addition to Defendant's testimony that corroborate his claims and demonstrate prejudice. First, we consider the harshness of deportation and attribute proper weight to that harshness as an element of any immigrant's decision-making process. *Paredez*, 2004-NMSC-036, ¶ 18. Second, we evaluate Defendant's testimony itself, which is corroborated in the record at the time of Defendant's plea, with references both oblique and direct to Defendant's concern about his immigration status and his attachment to this country. We also recognize that Defendant's post-conviction behavior weighs in his favor, though less significantly in this case than the pre-conviction circumstances. Third, we determine that the factors considered by the district court, when afforded their due weight under our current legal standards, were both factually and legally inadequate grounds for disposing of Defendant's claim of prejudice. Taken in conjunction with his own

9

testimony, the totality of the factors presented firmly establishes a reasonable probability that Defendant would have rejected the plea offer if his attorney had competently advised him. Finally, we conclude that under these circumstances Defendant's plea was not made knowingly and voluntarily and that it was, therefore, error to accept it.

**i.      Harshness of Immigration Consequences**

{18}      As the Supreme Court noted in *Paredez*, "Deportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea[.]" *Paredez*, 2004-NMSC-036, ¶ 18. The extremity—and often finality—of deportation exposure heightens the probability of prejudice because it is "a particularly severe penalty" and can be "the most important" result of a guilty plea for non-citizen defendants. *Padilla*, 559 U.S. at 364-65.

{19}      Defendant testified that he had been a political prisoner in Cuba and that he feared he would face the same fate if forced to return. He stated that the Cuban government had deprived him of all his property when he came to the United States. He described himself as "not in agreement with Fidel [Castro]," which he believed would result in cruel treatment in his native country even if he avoided imprisonment. The district court apparently agreed that conditions in Cuba are "particularly horrific."

{20} The record indicates that the district court considered the actual probability of Defendant's deportation to Cuba, noting, "They don't deport people back to Cuba from the United States technically." The State expressed a similar opinion that "the United States and Cuba do not have an agreement to return convicted felons back to Cuba under any circumstances[.]"

{21} The arrangements for deportation between the United States and Cuba are a political matter outside the control of either the court or Defendant and are subject to change. Moreover, the district court's statements do not accurately reflect the current status of Cuban immigrants convicted of deportable offenses. *See* 8 U.S.C. § 1231(a)(3), (6) (2012); *see also, e.g.*, *Perez v. State*, 120 So. 3d 49, 50 (Fla. Dist. Ct. App. 2013) (stating that the defendant's counsel wrongly advised that the defendant could not be deported because he was Cuban, when in fact deportation consequences were "inevitable" for his drug offenses). Defendant himself attempted to inform the district court of this fact.

{22} Irrespective of the likelihood of actual deportation to countries such as Cuba, deportable aliens may be detained within the United States pending their removal. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); 8 C.F.R. § 241.4, 241.5 (2012). In this case, Defendant pleaded guilty to a charge of drug trafficking. Though he successfully completed a conditional discharge and has no criminal record in the state

of New Mexico, this plea constituted a conviction of an aggravated felony for immigration purposes. 8 U.S.C. § 1101(a)(43)(B); 8 U.S.C. § 1101(a)(48)(A)(i); 18 U.S.C. § 924(c)(2) (2012). Federal law mandates his detention and attempted deportation as a result. 8 U.S.C. § 1226(c)(1)(B) (2012). He is not eligible for asylum regardless of the conditions and consequences he may face if returned to Cuba. 8 U.S.C. § 1158(b)(2)(B)(i) (2012). Defendant has not yet been detained or removed, but immigration proceedings have been initiated. Regardless of the state of those proceedings, it is the possibility of deportation—in addition to other immigration consequences short of deportation—that we assess for purposes of determining prejudice. *Carlos*, 2006-NMCA-141, ¶ 16. We recognize that deportation is a particularly difficult and harsh result for many defendants, *Paredez*, 2004-NMSC-036, ¶ 18, and this Defendant in particular testified that he was "abused in Cuba" and imprisoned for his political views. For reasons like these, we analyze prejudice in immigration-based ineffective assistance of counsel claims differently from other types of claims. *Favela*, 2013-NMCA-102, ¶ 21. The district court failed to account for the severity of this punishment and the increased likelihood that a person faced with deportation might reconsider his decision to accept a guilty plea. *Paredez*, 2004-NMSC-036, ¶ 18.

## ii.     Defendant's Testimony and Corroborating Evidence

{23}     Defendant argues that he was prejudiced "by accepting a plea that made certain his deportation with the prospect of indefinite detainment to a country where he had been a political prisoner, where he had no employment, family[,] or property, [and] where he was subjected to abuse[.]" He claims that there is a reasonable probability that he would instead have elected to go to trial, which "would have provided him [the] opportunity to maintain his employment, to stay close to his family, and to live as a free resident[.]" He consistently maintained that his immigration status within this country is of utmost importance to him, and stated that he acted to set aside his guilty plea upon realizing that it carried negative consequences for that status. He also asserted that he would have rejected the plea offer at the outset if he had known of the possibility of deportation. We find corroboration for several of Defendant's claims in the record.

{24} "Deportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea," *Paredez*, 2004-NMSC-036, ¶ 18, particularly in cases like Defendant's, where the immigrant has established roots within this country. For over a decade, Defendant has lived in the United States with his family. We consider Defendant's attachment to the United States as one of the types of evidence he may present to corroborate his current claims. *Edwards*, 2007-NMCA-043, ¶ 36; *see also*

*United States v. Couto*, 311 F.3d 179, 191 (2d Cir. 2002), *abrogated on other grounds by Padilla*, 559 U.S. 356 (recognizing "[the d]efendant's overriding concern is remaining in the United States and hence she very likely would not have pleaded guilty if she had understood the deportation consequences of [her] plea"); *Sial v. State*, 862 N.E.2d 702, 706 (Ind. Ct. App. 2007) (finding a reasonable probability that the defendant would have rejected the plea if properly advised due to the "special circumstances" that he had a child and wife in the United States).

{25}     In his testimony, Defendant identified that seeing his children, who reside in the United States, was always a priority. The trial court's personal notes corroborate the assertion that Defendant expressed that sentiment prior to the court's acceptance of his guilty plea, and that he made the court aware that he had a daughter residing in Miami. It is evident from these notes and the record that all parties, including the court, realized that Defendant's immigration status was threatened.

{26}     Defendant's attorney provided incompetent advice regarding the impact of the conditional discharge, as the district court properly concluded, and the trial court itself made statements suggesting it believed that Defendant would not have a conviction if he successfully completed the conditional discharge. The trial court coupled this explanation with references to Defendant's foreign citizenship—clearly implying that all present knew of or suspected his status and intended to provide

14

Defendant an option that preserved it. The trial court's notes reveal that it specifically considered sentencing options in light of Defendant's immigration status and the possibility of deportation. In noting that Defendant requested the conditional discharge, the court listed only two facts: that Defendant was deportable and that he had a daughter in Miami. The record thus corroborates Defendant's claim that the threat of deportation ranked high amongst his concerns in these proceedings, and that he communicated that fact to both his attorney and the trial court.

{27} Defendant's pre-conviction efforts to inform the trial court of his circumstances and his clear, acknowledged intent to avoid deportation and other immigration consequences at all times during the plea proceedings strongly support the conclusion that he would have rejected the plea if properly advised. *See Kovacs v. United States*, 744 F.3d 44, 53 (2d Cir. 2014) (stating that prejudice was demonstrated where defense counsel had negotiated the plea in a certain way "for the sole reason that defense counsel believed it would not impair [the defendant's] immigration status"). The district court erred in neglecting these portions of the record in its analysis.

{28} Furthermore, Defendant is not limited to pre-conviction behavior in his demonstration of prejudice; the district court should also have considered his post-conviction behavior. *Edwards*, 2007-NMCA-043, ¶ 36. In *Paredez*, our Supreme Court held that the speed of a defendant's post-conviction reaction upon discovering

the adverse immigration consequences of his guilty plea could be considered when weighing the reasonable probability that he would have acted differently with competent advice. *Paredez*, 2004-NMSC-036, ¶ 21 (stating that such an inference of prejudice is "logical" but not "conclusive[]").

{29} In this case, Defendant claims that his goal is to obtain citizenship. He did apply for naturalization, but was determined ineligible. The letter informing him of this fact also contained reference to the possibility that he was "amenab[le] to removal," bolstering the likelihood that Defendant discovered the threat to his immigration status only upon receipt of the letter in November 2010. He testified that he researched the issue himself and then immediately obtained a lawyer. He moved to withdraw his guilty plea in early 2011. Though these actions cannot be "conclusive[,]" we consider them alongside the other corroborating evidence Defendant presented to demonstrate prejudice and recognize that they further support his claim that he would have rejected the plea offer if provided reasonable assistance. *Id.*

{30} The district court failed to consider Defendant's post-conviction actions at all. It assessed only pre-conviction statements, and further narrowed its evaluation to two methods for Defendant to demonstrate prejudice: (1) protestations of innocence, and (2) expressions of his desire to go to trial. Though either of these two methods could

have been employed to demonstrate prejudice, Defendant may use a wide array of other evidence to show the prejudicial effect of the incompetent counsel. *Edwards*, 2007-NMCA-043, ¶ 36. The district court improperly overlooked the other undisputed corroboration within the record. It thus clearly erred in saying that the "only evidence presented in this case [was] the hearing testimony of [D]efendant."

### iii. The District Court Improperly Relied on Lesser Factors

{31} The district court placed particular emphasis on the strength of the State's case in determining whether Defendant had suffered prejudice. The State had a convincing prima facie case against Defendant; a person cooperating with the police arranged a purchase of five hundred dollars' worth of crack-cocaine, which resulted in law enforcement officers arresting Defendant as he arrived with 52 rocks worth approximately five hundred dollars.

{32} In conjunction with the strength of the State's case, the district court considered the favorability of the plea agreement. In *Paredez*, the Court observed that the defendant received a "substantial benefit" from his plea agreement, which did not require incarceration; "It is conceivable that a non-citizen might opt to plead guilty and accept deportation to avoid serving a prison sentence, rather than face the possibility of both incarceration and deportation." 2004-NMSC-036, ¶ 22. In this case, the decision was arguably further simplified when Defendant received the

17

conditional discharge rather than a term of imprisonment.

{33} The district court weighed the favorability of the plea agreement against Defendant's "likely conviction" on the facts as presented at the plea colloquy, which may have exposed Defendant to immigration proceedings regardless, and determined that Defendant did not demonstrate prejudice. Its ruling also faulted Defendant for not "maintain[ing] his innocence" or expressing a desire for trial prior to conviction. We note that protestations of innocence and expressions of desire for trial are both possible examples of pre-conviction behavior that, if present, would be a valid part of the prejudice analysis. *Patterson*, 2001-NMSC-013, ¶ 30 (stating that the defendant's claims of innocence were examples of pre-conviction behavior that may indicate disposition to reject the plea, and were considered alongside other evidence). Neither, however, is required to show prejudice, nor do they constitute an exhaustive list of ways in which a defendant may demonstrate prejudice. *Edwards*, 2007-NMCA-043, ¶ 36. We also find that the district court's heavy, almost exclusive reliance on the strength of the State's case and the benefits of the plea was improper because it contradicts the standard set forth in *Favela*. 2013-NMCA-102, ¶ 21.

{34} The strength of the State's case may be considered as part of a larger analysis of prejudice, *Carlos*, 2006-NMCA-141, ¶ 20, but "should not weigh as heavily, because the relevant initial inquiry is simply whether, given fully accurate

18

information about the collateral consequence, it is reasonably probable that the defendant would have rejected the plea offer." *Favela*, 2013-NMCA-102, ¶ 21 (alteration, omission, internal quotation marks, and citation omitted). Even in cases in which acquittal is unlikely and the possible penalty for conviction at trial is severe, non-citizen defendants "rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of [conviction]." *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011), *abrogated on other grounds by Chaidez v. United States*, 133 S. Ct. 1103 (2013); *State v. Sandoval*, 249 P.3d 1015, 1022 (Wash. 2011) (en banc) (rejecting the plea even at the risk of conviction at trial would be particularly reasonable for a defendant who "had earned permanent residency and made this country his home").

{35}     The district court expressed the opinion that, based on the State's presentation, "Chances were pretty high that [the] evidence was going to be presented to a jury, that he's going to be convicted." The court stated that Defendant "got . . . the benefit of the plea" and received "everything that his attorney promised, but for this unforeseen, by everybody, consequence." It called the situation "tragic."

{36}     However, the district court also agreed that Defendant probably did not obtain a better result by his plea than he would have at trial. At the time of the plea, the trial court considered only three options:  suspended sentence, deferred sentence, and

conditional discharge. All parties agreed that probation was appropriate for Defendant, including the State. In addition to offering a sentence without any incarceration time, the State did not object to arguments for a conditional discharge. As the district court itself acknowledged, had a trial taken place, Defendant "probably would have gotten probation" because he "was really a mule." The risk that Defendant faced at trial was therefore a minimal one, as he was likely to attain substantially the same result but would retain the chance to avoid immigration consequences—a chance he might rationally have preferred to the then-unknown automatic consequences of his guilty plea.

{37} During his testimony at the evidentiary hearing in 2012, Defendant asserted an affirmative defense to the trafficking charge, claiming he operated as a mule under duress. He admitted that he had not discussed with his attorney the possibility of using this defense at trial, as his attorney strongly encouraged him to accept the plea. Though the existence of an affirmative defense in this case would increase the probability that Defendant might have gone to trial rather than face immigration consequences, Defendant's lawyer never testified and so could offer no evidence regarding the possible existence of an affirmative defense. Both parties agreed that the attorney could not remember the case after the significant time lapse. Without further corroboration of the elements of this defense and its likelihood of succeeding

20

at trial, we cannot weigh it against the strength of the State's evidence at the time of the plea proceeding. *Hill*, 474 U.S. at 59 (stating that for ineffective assistance of counsel claims involving affirmative defenses, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial").

{38} Whether or not the affirmative defense had merit, the record contains clear indications that the parties identified substantial mitigation in the case, which they considered in both plea negotiations and sentencing before agreeing that Defendant merited probation. At the guilty plea hearing, Defendant's attorney referenced a meeting in chambers, reminding the court that it was "aware of how it came down" and thus asking the court for a conditional discharge. The attorney further stated, "He was—in discussions in chambers, as you'll recall, Judge, the indication was, he was a mule[.]" The court also specifically reminded Defendant that he was not to discuss whether the cocaine belonged to him or whether he was "only helping somebody else" in his colloquy, stating only whether he had possessed it. These references are substantial enough to corroborate portions of Defendant's recent testimony and to underline that Defendant received no extreme benefit from pleading guilty as compared to his probable trial results. The district court agreed, but found that in either circumstance Defendant would have been exposed to the same possibility of

deportation—and therefore he was not prejudiced by his plea. "[W]e don't have anything that could have been different," it stated.

{39} The district court manifestly applied the wrong standard to Defendant's motion. It weighed Defendant's probable result at trial against the terms of his current plea, concluding that they were essentially the same. This conclusion ignores the possibility that an affirmative defense might have existed that could have impacted the results of the trial. Defendant is not required to demonstrate that he would have obtained a better result at trial than he received from his plea. *Edwards*, 2007-NMCA-043, ¶ 34. He need only demonstrate a reasonable probability that he would have rejected the plea as offered had he known of its immigration consequences. *Favela*, 2013-NMCA-102, ¶ 21. Had Defendant rejected the plea, he would have had the opportunity to renegotiate its terms—perhaps, e.g., agreeing to plead to an offense that would not be defined as an aggravated felony under federal immigration law—or take his case to trial, where any result may have been obtained. *Id.*

{40} The district court's undue emphasis on the strength of the State's case and the apparent appeal of the plea offer, which resulted in a relatively favorable disposition of the conditional discharge, also fails to account for both the unique hardship of immigration consequences and the normal operation of plea bargain negotiations. *Id.* ¶ 20. Possible deportation is such a drastic result that, in cases in which a defendant

22

is unlikely to receive much prison time, he "is usually much more concerned about immigration consequences than about the term of imprisonment." *Paredez*, 2004-NMSC-036, ¶ 18 (internal quotation marks and citation omitted). Defendant's rejection of the plea offer in this case would have been entirely rational if he had been aware that he might be deported as a result of accepting it; both the factual aspects of the record and the Defendant's own expressed eagerness to defend his immigration status suggest that there is indeed a reasonable probability that he would have behaved differently if afforded the effective counsel to which he was entitled.

{41} All parties appear to have been acting with the conscious intent to preserve Defendant's immigration status but pursued that end operating on mistaken beliefs. Under these circumstances, a plea to a lesser charge was a distinct possibility if Defendant and his counsel had been properly informed. Certain possession charges, for example, are not aggravated felonies under federal law and would have resulted in less dramatic collateral consequences. 8 U.S.C. § 1227(a)(2)(B)(i) (2012) (stating that controlled substance offenses short of aggravated felonies do not require mandatory deportation). We therefore reject the district court's finding that there was no prejudice to Defendant.

**iv.    Voluntariness of Plea When Counsel Is Ineffective**

{42} The voluntariness of a guilty plea depends on whether counsel provided the

effective assistance to which defendants are constitutionally entitled. *Garcia*, 2010-NMSC-023, ¶ 46; *Barnett*, 1998-NMCA-105, ¶ 12. Improper advice regarding immigration consequences can undermine the knowing and voluntary nature of a guilty plea and render it invalid. *Paredez*, 2004-NMSC-036, ¶ 19. In this case, "undisputed facts" in the record established that Defendant never received competent counsel but rather received incorrect advice regarding the immigration consequences of his plea. *Id.* ¶ 5. Defendant also established a "reasonable probability" that he would have rejected the plea if aware of those consequences, thus demonstrating prejudice. *Patterson*, 2001-NMSC-013, ¶ 18 (internal quotation marks and citation omitted). In these circumstances, Defendant's plea could not have been knowing and voluntary, and it was thus manifest error to accept it. *Barnett*, 1998-NMCA-105, ¶ 12; *Sotelo*, 2013-NMCA-028, ¶ 37.

{43} In analogous circumstances regarding sex offender registration, we found that a defendant demonstrated prejudice when: (1) he later testified that he "would have fought" the charge if he had known it was a sex offense that would subject him to registration; (2) he presented other evidence that the State and his own attorney failed to realize the offense would require registration—and consequently did not advise him of that fact; and (3) the consequences, namely sex offender registration, were harsh. *State v. Trammell*, 2014-NMCA-107, ¶ 18, 336 P.3d 977 (internal quotation

24

marks and citation omitted). We concluded that, in such circumstances, sex offender registration prejudiced the defendant because "it constituted a breakdown in the fundamental fairness of the proceedings." *Id.*

{44} In this case, Defendant testified unequivocally at the evidentiary hearing, "I would rather be in prison here, other than going back to Cuba." He claims that he would have rejected the plea outright had he known of the consequences for his immigration status. He also presented evidence, which indeed persuaded the district court, that his lawyer and the trial court both seemed unaware of the specific impacts that would stem from a guilty plea, and that no one provided him with effective, reasonable advice with which he might make an informed decision. In both of these respects, the present case closely mirrors our ruling in *Trammell*; the possible result of deportation, however, has been acknowledged a uniquely grave consequence. *Favela*, 2013-NMCA-102, ¶ 20. Therefore, the same logic applies here as in *Trammell*—the collateral consequences to which Defendant is now exposed constitute a breakdown in the fundamental fairness of the plea process and require that his guilty plea be set aside. *Trammell*, 2014-NMCA-107, ¶ 18.

**CONCLUSION**

{45} The district court properly concluded that Defendant's counsel acted incompetently, but in its prejudice analysis it failed to consider the evidence that

25

Defendant's testimony was not merely "self-serving," but could be corroborated by the record. *Patterson*, 2001-NMSC-013, ¶ 29. It also applied an improper standard for assessing the likelihood that Defendant would have rejected the plea. Noting the likelihood that Defendant would obtain a similar sentence to the one he received under the plea agreement if he went to trial, the district court here improperly asked "[w]ould the result reasonably [have] been different than it is today?" rather than whether there was a "reasonable probability" that Defendant would have rejected the plea with competent advice. Defendant was not obligated to show that he might have obtained a "different result" at trial than he obtained with his plea; he was only required to show that rejecting the plea was a rational, reasonably likely course of action in light of his circumstances. *Favela*, 2013-NMCA-102, ¶ 20. We determine that he did so.

{46} For this reason, and in light of the similarities to *Trammell*, we reverse the district court's denial of Defendant's motion to set aside his guilty plea and remand for further proceedings in keeping with this decision.

{47} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**TIMOTHY L. GARCIA, Judge**