This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38963**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**NATASHA GONZALES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Erica Schiff, Assistant Attorney General
Albuquerque, NM

for Appellee

Vrapi Weeks
Amber L. Weeks
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Natasha Gonzales appeals the district court's order denying her petition to set aside her guilty plea pursuant to Rule 5-803 NMRA. She argues: (1) she received ineffective assistance from her attorney, who failed to inform her of the immigration consequences of her plea and whose representation suffered from a conflict of interest; and (2) the district court erred in presuming regularity in the proceedings concerning her plea despite no record of a written plea agreement or plea

colloquy. Because we agree with Defendant's contention that her attorney was ineffective because he failed to advise her of the immigration consequences of the plea, we reverse.

## BACKGROUND

**{2}** In 2002, Defendant, a Venezuelan immigrant, pleaded guilty to criminal sexual contact of a minor in the third degree, contrary to NMSA 1978, Section 30-9-13(A) (1991, amended 2003). She received a conditional discharge, which she completed successfully, and the matter was dismissed in 2005. Defendant later learned that her plea rendered her deportable, and in 2018, she petitioned to set aside her guilty plea pursuant to Rule 5-803. In support of the petition, Defendant submitted various exhibits, including her affidavit and one from the attorney who represented her during the plea proceedings.

**{3}** The district court held a status conference in February 2020, which Defendant attended with her former attorney. Defendant declined to testify at the status conference, asserting her Fifth Amendment rights but proffered the testimony of her former attorney. The district court declined to hear the attorney's testimony and later entered a written order denying Defendant's petition to set aside her conviction.

## DISCUSSION

**{4}** When a defendant moves to withdraw his or her guilty plea, the district court's denial of that motion is reviewed for abuse of discretion. *See McGarrh v. State*, 2022-NMCA-036, ¶ 9, 514 P.3d 55. "An abuse of discretion occurs when a district court's ruling is clearly erroneous or based on a misunderstanding of the law, or when the court ignored undisputed facts that established that the plea was not knowingly and voluntarily given." *State v. Tejeiro*, 2015-NMCA-029, ¶ 4, 345 P.3d 1074 (alterations, internal quotation marks, and citation omitted). Defendant argues that her plea should be set aside because she received ineffective assistance from her attorney based on his failure to inform her of the immigration consequences of her plea. "Because a motion to withdraw a guilty plea connected to an allegation of ineffective assistance of counsel is a mixed question of law and fact, we review Defendant's claim de novo." *State v. Gallegos-Delgado*, 2017-NMCA-031, ¶ 11, 392 P.3d 200.

**{5}** "Under the Sixth Amendment of the United States Constitution, defendants in criminal cases have the right to reasonably effective assistance of counsel. This right extends to plea negotiations." *Id.* (citation omitted). In order to be valid, a guilty plea must be voluntary and intelligent. *See State v. Garcia*, 1996-NMSC-013, ¶ 9, 121 N.M. 544, 915 P.2d 300. "If a defendant pleads guilty based on the advice of his or her attorney, whether the plea was voluntary and intelligent depends on whether the attorney's assistance in counseling the guilty plea was ineffective." *Gallegos-Delgado*, 2017-NMCA-031, ¶ 11.

**{6}** The United States Supreme Court has adopted a two-part test applicable to ineffective assistance of counsel claims. *See id.* ¶ 12. Under the test, a defendant seeking to claim ineffective assistance of counsel has the burden of demonstrating: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. "The defendant must demonstrate the satisfaction of both prongs to prove that his[/her] plea was not knowing and voluntary and should be set aside." *Tejeiro*, 2015-NMCA-029, ¶ 6.

## A.    Deficient Performance

**{7}** With respect to guilty pleas that have deportation and other immigration consequences, our Supreme Court held in *Paredez*, 2004-NMSC-036, 136 N.M 533, 101 P.3d 799, that "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would . . . be deficient performance." *Id.* ¶ 16. The *Paredez* Court further held:

> If a client is a non-citizen, the attorney must advise that client of the *specific immigration consequences* of pleading guilty, *including* whether deportation would be virtually certain. Proper advice will allow the defendant to make a knowing and voluntary decision to plead guilty. . . . An attorney's failure to provide the required advice regarding immigration consequences will be ineffective assistance of counsel if the defendant suffers prejudice by the attorney's omission.

*Id.* ¶ 19 (emphases added); *see also State v. Favela*, 2015-NMSC-005, ¶ 14, 343 P.3d 178 ("It is imperative that every defendant entering into a plea agreement which could result in immigration consequences possesses a clear understanding of those immigration consequences.").

**{8}** Here, the immigration consequences resulting from Defendant's guilty plea are substantial. Defendant faces near-certain deportation as a result of her guilty plea for criminal sexual contact of a minor. *See Paredez*, 2004-NMSC-036, ¶ 4 ("If [the d]efendant's guilty plea for criminal sexual contact of a minor stands, he almost certainly will be deported."). Under federal law, "[a]ny alien . . . in and admitted to the United States *shall*, upon the order of the Attorney General, be removed" if the alien is within a statutorily defined class of deportable aliens. 8 U.S.C. § 1227(a) (emphasis added). One class of deportable aliens includes those convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Criminal sexual contact of a minor is an "aggravated felony" as that term is used in Section 1227. *See* 8 U.S.C. § 1101(a)(43)(A) (listing "murder, rape, or sexual abuse of a minor" as within the term). Further, not only did Defendant's plea render her deportable, she is ineligible for discretionary relief from deportation. *See Paredez*, 2004-NMSC-036, ¶ 4; 8 U.S.C. § 1229b(a)(3) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has *not* been convicted of any aggravated felony.") (emphasis added)).

**{9}** It is undisputed, and the record demonstrates, that Defendant's attorney failed to advise Defendant of the immigration consequences of her plea. Accordingly, the district court correctly presumed that Defendant met the first prong of the ineffective assistance of counsel test.

## B. Prejudice

**{10}** The second prong of the *Strickland* test requires Defendant to demonstrate that her attorney's "constitutionally ineffective performance affected the outcome of the plea process." *Paredez*, 2004-NMSC-036, ¶ 20 (internal quotation marks and citation omitted). "In order to establish such prejudice, the defendant must show that there is a reasonable probability he [or she] would not have taken the plea had the attorney's representation regarding the specific immigration consequences been constitutionally adequate." *Gallegos-Delgado*, 2017-NMCA-031, ¶ 20 (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Favela*, 2015-NMSC-005, ¶ 11 (internal quotation marks and citation omitted).

**{11}** "Our recent jurisprudence adopts a broad approach to how a defendant can demonstrate prejudice." *Gallegos-Delgado*, 2017-NMCA-031, ¶ 20 (internal quotation marks and citation omitted). "There is no formulaic test for determining whether a defendant has demonstrated prejudice. Such a determination is made on a case-by-case basis, in light of the facts of that particular case." *Favela*, 2015-NMSC-005, ¶ 19. "To show that a defendant would have rejected a plea deal had his [or her] attorney advised him [or her] of the specific immigration consequences beyond deportation, a defendant must show that his [or her] decision to decline the plea bargain would have been rational under the circumstances." *Gallegos-Delgado*, 2017-NMCA-031, ¶ 21 (internal quotation marks and citation omitted). "A defendant's testimony may comprise part of the evidence for his claim of prejudice, but generally the claim cannot rest solely on uncorroborated self-serving statements." *Tejeiro*, 2015-NMCA-029, ¶ 15.

**{12}** Corroborating evidence may include, for example, the strength of the state's case, evidence of a defendant's connections to the United States, and the defendant's post-conviction behavior that demonstrates he or she probably would not have pled guilty had he received competent advice. *See Gallegos-Delgado*, 2017-NMCA-031, ¶ 21. "Although the issue of prejudice requires objective evidence, where that evidence is sparse, the question may well turn on what the defendant would have been motivated to do if given accurate information." *State v. Carlos*, 2006-NMCA-141, ¶ 21, 140 N.M. 688, 147 P.3d 897. We thus "consider the harshness of deportation and attribute proper weight to that harshness as an element of any immigrant's decision-making process." *Tejeiro*, 2015-NMCA-029, ¶ 17 (citing *Paredez*, 2004-NMSC-036, ¶ 18).

**{13}** In concluding that Defendant had not demonstrated prejudice, the district court reasoned, in part, that "[Defendant] fail[ed] to allege facts showing prejudice" and "proffered no evidence identifying particular weaknesses in the State's evidence." The district court also found that Defendant's attestation—that she would have gone to trial

had she been advised of her plea's immigration consequences—lacked credibility, citing Defendant's assertion of her Fifth Amendment right against self-incrimination at the status conference and certain inconsistent statements made by Defendant elsewhere in the record.

**{14}**     On appeal, the State argues that, in light of Defendant's failure to offer live testimony, the district court appropriately weighed the credibility of Defendant's affidavit based on evidence in the record. The State contends that Defendant failed to demonstrate prejudice based on the strength of the State's case and the benefits of the plea agreement to Defendant; the lack of evidence indicating that Defendant intended to go to trial before receiving the plea offer; and Defendant's failure to demonstrate that her immigration status was of paramount importance to her, pointing to her delay in taking action to become a United States citizen until 2017. We disagree and conclude that Defendant demonstrated prejudice.

**{15}**     Although the district court found that Defendant proffered no evidence identifying particular weaknesses in the State's evidence against her, the district court's order did not consider the harshness of the consequences with which Defendant was confronted as a result of her guilty plea, which likely would have informed Defendant's decision to proceed to trial had she known the full scope of immigration ramifications. *See Gallegos-Delgado*, 2017-NMCA-031, ¶ 23 (stating that, although the state's cases appeared to have been strong, the district court did not consider the harshness of the consequences the defendant was confronted with as a result of his guilty plea, which likely would have informed his decision to proceed to trial had he known the full scope of immigration ramifications). "Deportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea," and Defendant's plea meant that she would "almost certainly" be deported. *See Paredez*, 2004-NMSC-036, ¶¶ 4, 18, 21.

**{16}**     As to the effect of the harshness of deportation on Defendant's decision-making process, *see Tejeiro*, 2015-NMCA-029, ¶ 17, Defendant attested that she would not have taken the plea had she known the immigration consequences, an assertion corroborated by her attorney. Defendant's attorney also attested that he would not have recommended the plea to Defendant had he known the immigration consequences, corroborating Defendant's statements regarding the weight she would have attributed to the harshness of deportation in her decision-making process. Although the district court discounted as "conclusory" Defendant's attorney's attestation that Defendant would not have accepted the plea, the district court declined to hear the attorney's testimony when it was offered at the status conference. In short, the district court "failed to account for the severity of this punishment and the increased likelihood that a person faced with deportation might reconsider his [or her] decision to accept a guilty plea." *See Tejeiro*, 2015-NMCA-029, ¶ 22 (citing *Paredez*, 2004-NMSC-036, ¶ 18).

**{17}**     Regarding Defendant's connections to the United States, *see Gallegos-Delgado*, 2017-NMCA-031, ¶ 21, Defendant's attestation that she had built a life in this country was corroborated by evidence that she was brought to the United States when she was thirteen years old, attended school in this country, and, as of the date she entered the

plea, had lived half her life here, and had a three-month-old baby. Defendant's connections to the United States could therefore have been "deciding factors" in her decision to plead guilty given that her attorney failed to advise her that she would face immigration consequences. *See id.* ¶¶ 15, 24 (stating that the defendant's connections to the United States, including the defendant's young child and the fact that the defendant had lived his entire adult life in this country "could have been deciding factors in his decision to plead guilty given he was unaware of the more severe immigration consequences he faced").

**{18}** Although the district court stated it was without the benefit of testimony from Defendant at the status conference and could properly find Defendant's attestation that she would not have accepted the plea had she known the immigration consequences lacked credibility, Defendant's claim did not "rest solely on uncorroborated self-serving statements." *See Tejeiro*, 2015-NMCA-029, ¶ 15. Rather, Defendant's attestations addressing what she "would have been motivated to do if given accurate information," were corroborated by "objective evidence" of her connections to the United States, *see Favela*, 2015-NMSC-005, ¶¶ 19-20, including Defendant's passport, which indicated her date of entry into this country as a teenager, her daughter's birth certificate, and Defendant's educational records from this country. The district court, however, appears to have discounted the significance of this objective corroborating evidence, as well as the significance of corroborating evidence from Defendant's attorney whose testimony was offered at the status conference. In light of the evidence corroborating Defendant's affidavit, we disagree with the district court that Defendant "fail[ed] to allege facts showing prejudice."

**{19}** Finally, although the State argues that Defendant failed to show her "immigration status was of paramount importance to her," Defendant's actions following her plea demonstrate efforts to remain in this country. *See Gallegos-Delgado*, 2017-NMCA-031, ¶ 25 (recognizing that "a defendant's post-conviction behavior may be relevant in the prejudice analysis"). As of 2017, Defendant had a U Visa application pending. In 2018, after consulting an immigration attorney and learning that she was ineligible for a visa, Defendant filed this petition to withdraw her guilty plea.

**{20}** In sum, the facts of this particular case undermine our confidence in the outcome of the plea process, *see Favela*, 2015-NMSC-005, ¶¶ 11, 19; *Paredez*, 2004-NMSC-036, ¶ 20, and we conclude there is a reasonable probability Defendant would not have taken the plea had she been given adequate advice about the effect that her guilty plea would have on her immigration status. *See Gallegos-Delgado*, 2017-NMCA-031, ¶ 20. Defendant has thus demonstrated that she was prejudiced by her attorney's constitutionally inadequate representation. Having met both prongs of the test for ineffective assistance of counsel, based on Defendant's attorney's failure to advise her of the immigration consequences of the plea, we conclude Defendant's plea was not knowing and voluntary and should be set aside. *See Tejeiro*, 2015-NMCA-029, ¶¶ 6, 42. Accordingly, we do not reach Defendant's additional claims of error.

**CONCLUSION**

**{21}** For the foregoing reasons, we reverse the district court's denial of Defendant's motion to set aside her guilty plea and remand for further proceedings consistent with this opinion.

**{22}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**