# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 7, 2016

**NO. 34,321**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MANUEL GALLEGOS-DELGADO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**VANZI, Judge.**

{1}     Defendant Manuel Gallegos-Delgado is an undocumented immigrant who pled guilty to drug possession and driving while under the influence of alcohol in exchange for the State agreeing not to oppose a conditional discharge of the drug charge. Federal removal proceedings were then initiated against Defendant, pursuant to the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537 (2012), and he was permanently deported. Defendant subsequently filed a motion to withdraw his guilty plea, arguing that his attorney had only advised him that a possible consequence of pleading guilty would be deportation, not that he would be barred re-entry into the United States forever. The district court's denial of Defendant's motion to withdraw his plea is the subject of this appeal. The question presented to this Court is whether Defendant's attorney rendered deficient representation by failing to advise him of the specific immigration consequences that would follow as a result of his guilty plea, and if so, whether Defendant was prejudiced by her deficient performance. We answer these questions in the affirmative and, accordingly, reverse and remand.

**BACKGROUND**

{2}    On May 30, 2013, Defendant pleaded guilty to possession of cocaine and driving while under the influence of alcohol in exchange for dismissal of other charges against him and a probated sentence. Part of the plea agreement was that the State would not oppose a conditional discharge of the possession charge. After pleading guilty, Defendant received a conditional discharge of the possession charge, was placed on supervised probation, and received a deferred sentence. At the plea and sentencing hearing, during the plea colloquy, the district court judge inquired as to whether there were any immigration issues, and Defendant's attorney said she "explained [the] immigration consequences for [Defendant and the] possibility of deportation" and that he had consulted with an immigration attorney. The judge then specifically asked Defendant if his attorney had explained the immigration consequences of entering the guilty plea and that he may be deported. Defendant said that she had and that he nevertheless wanted to go forward with the plea. Defendant additionally stated that he had an opportunity to discuss the terms and conditions of the plea agreement with a separate immigration attorney. The judge explained to Defendant that if he successfully completed the terms of his probation, the possession charge would be discharged and he would no longer have it on his record. Of note, a conditional discharge operates like a conviction under federal immigration law, *see*

2

8 U.S.C. § 1101(48)(A), unlike in New Mexico, where a conditional discharge is not an adjudication of guilt. NMSA 1978, § 31-20-13(A) (1994).

{3}     Defendant subsequently violated the terms of his probation, and the State moved to revoke Defendant's probation. The district court appears to have retracted the conditional discharge for the possession charge, and an amended judgment and sentence was entered on November 20, 2013.

{4}     Because Defendant violated New Mexico law, he was subject to deportation under the INA. *See* 8 U.S.C. §§ 1182(a)(2)(A), 1226(a)(1), 1227(a)(1)(B). On November 25, 2013, Defendant was taken into custody by the Department of Homeland Security (DHS), and removal proceedings were initiated against him. An Immigration Judge (IJ) determined that Defendant was ineligible for cancellation of removal and adjustment of status under the INA because of his possession conviction. The IJ also denied Defendant's request for voluntary removal because Defendant's controlled substance conviction prohibited Defendant from ever lawfully returning to the United States.

{5}     Defendant then filed a motion for relief from judgment and to withdraw his guilty plea. In the motion, Defendant alleged that he was not advised that he would be deported as a result of his guilty plea and stated that he would not have entered into the plea agreement if he had known the specific immigration consequences of his

3

plea. The district court held a hearing on the motion on October 20, 2014. At the hearing, Defendant testified that he had already been deported and he was currently in the custody of the United States Immigrations and Customs Enforcement (ICE). Defendant further testified that he would not have entered the guilty plea had he known all the immigration consequences. On cross-examination, Defendant admitted that his attorney told him he "would" be deported, despite asserting in an affidavit she said he "might" be deported. On re-direct, Defendant confirmed that he knew he was going to be deported but said he did not know about the other immigration consequences that would result from the plea, such as being forbidden from ever returning to the United States. During his testimony, Defendant clarified that he never had actually hired an immigration attorney; he had only spoken to one briefly on the phone, and she had not discussed the specific consequences that might emerge from pleading guilty because she had not reviewed his case.

{6}     Defendant's trial attorney, who had since withdrawn as Defendant's counsel, also testified at the hearing, and she said that the evidence against Defendant was "strong" and he was "adamant" in taking the plea. Furthermore, she testified that she specifically told Defendant that the conditional discharge "would not have the same effect with immigration" as it would with other clients. However, she could not remember the exact language she used and whether she told Defendant "he would

4

most definitely, to a certainty, be deported" or whether he "can be deported." The following is additional relevant testimony from Defendant's trial attorney, Courtney Aronowsky, at the hearing:

[Prosecutor:]    Ms. Aronowsky, you're aware that since 2004, you are required to advise your clients of the specific immigration consequences of each charge to which they're pleading; isn't that correct?

[Ms. Aronowsky:] Yes.

[Prosecutor:]    But you did not do that in this case?

[Ms. Aronowsky:]  Yes, right.

. . . .

[Mr. Shattuck:]    Were you aware that he would be denied . . . bond while he was going through a removal proceeding?

[Ms. Aronowsky:] No.

[Mr. Shattuck:]    As result of this plea?

[Ms. Aronowsky:] No.

[Mr. Shattuck:]    Were you aware that he would be denied the right for voluntary removal and to return to the country as result of this plea?

[Ms. Aronowsky:] No.

[Mr. Shattuck:]    Were you aware that he would be denied any attempts to adjust his status as a result of entering this plea?

[Ms. Aronowsky:] No.

5

[Mr. Shattuck:]   And were you aware that he would never be able to reapply for reentry into this country?

[Ms. Aronowsky:] No.

[Mr. Shattuck:]   And since you were not aware of those issues, were you able to discuss them with him?

[Ms. Aronowsky:] No.

{7}   Ultimately, the district court denied Defendant's motion, finding that Defendant had been advised of the consequences of entering the guilty plea and that there was no evidence Defendant had wanted to go to trial. The district court also found that "[D]efendant's trial counsel was not deficient in her representation[,]" and that the "record fails to provide any proof that [D]efendant was either leaning toward trial by any pre-conviction statements or actions, or that it was a viable option he was considering." This appeal followed.

**DISCUSSION**

**Jurisdiction**

{8}   We begin by addressing whether this Court has jurisdiction in the present matter. We conduct our review of the jurisdictional issue de novo. *State v. Gutierrez*, 2016-NMCA-077, ¶ 17, 380 P.3d 872. Defendant requested appellate relief under Rule 1-060(B)(4) NMRA, which is the proper procedural mechanism for a person no longer in state custody to appeal an allegedly void judgment. *See State v. Tran*, 2009-

6

NMCA-010, ¶ 16, 145 N.M. 487, 200 P.3d 537. We have previously held that this Court has jurisdiction when a defendant wishes to "challenge his underlying criminal conviction when in the custody of ICE" if the Defendant has filed a Rule 1-060(B)(4) motion. *State v. Favela*, 2013-NMCA-102, ¶ 11, 311 P.3d 1213, *aff'd*, 2015-NMSC-005, 343 P.3d 178 (*Favela II*). Although a conditional discharge is not a conviction under New Mexico law, *see* § 31-20-13(A); *State v. Harris*, 2013-NMCA-031, ¶ 6, 297 P.3d 374, it has that effect under federal immigration law when an alien has pled guilty and a judge has ordered some type of punishment, even if a formal adjudication of guilt has been withheld. 8 U.S.C. § 1101(48)(A).

{9}     Defendant was in ICE custody at the time he filed this appeal and alleges that the judgment entered against him is void. Because Defendant's guilty plea to the possession charge operated as a conviction under federal law and was thus the basis for the IJ finding that he was ineligible for cancellation of removal, adjustment of status, voluntary removal, and that Defendant could never lawfully return to the United States, we conclude that this Court has jurisdiction pursuant to Rule 1-060(B).

**The Motion to Withdraw the Guilty Plea**

{10}     Defendant claims that the district court abused its discretion in denying his motion to withdraw his guilty plea because his attorney rendered deficient representation by not advising him of the specific immigration consequences and, as

7

a result, he was prejudiced. A district court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion. *State v. Tejeiro*, 2015-NMCA-029, ¶ 4, 345 P.3d 1074, *cert. denied*, 2015-NMCERT-005, 367 P.3d 440. An abuse of discretion happens "when a district court's ruling is clearly erroneous or based on a misunderstanding of the law[.]" *Id.* (internal quotation marks and citation omitted). The district court also abuses its discretion "when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Paredez*, 2004-NMSC-036, ¶ 5, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted).

{11}     Under the Sixth Amendment of the United States Constitution, defendants in criminal cases have the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984). This right extends to plea negotiations. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032; *see Hill v. Lockhart*, 474 U.S. 52, 56 (1985). In order to be valid, a guilty plea must be voluntary and intelligent. *State v. Garcia*, 1996-NMSC-013, ¶ 9, 121 N.M. 544, 915 P.2d 300. If a defendant pleads guilty based on the advice of his or her attorney, whether the plea was voluntary and intelligent depends on whether the attorney's assistance in counseling the guilty plea was ineffective. *Tejeiro*, 2015-NMCA-029, ¶ 5. Because a motion to withdraw a guilty plea connected to an allegation of

8

ineffective assistance of counsel is a mixed question of law and fact, we review Defendant's claim de novo. *See id.*; *see also Gutierrez*, 2016-NMCA-077, ¶ 33.

{12} In *Strickland*, the United States Supreme Court adopted a two-part test applicable to ineffective assistance of counsel claims. Under the test, a defendant seeking to make a claim for ineffective assistance of counsel has the burden of demonstrating: (1) "counsel's performance was deficient[,]" and (2) "the deficient performance prejudiced the defense." 466 U.S. at 687; *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. To prevail on an ineffective assistance of counsel claim, both prongs of the *Strickland* test must be met. *Tejeiro*, 2015-NMCA-029, ¶ 6.

**1. Deficient Performance**

{13} With respect to guilty pleas that have deportation and other immigration consequences, our Supreme Court held in *Paredez* that "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would . . . be deficient performance." 2004-NMSC-036, ¶ 16. The *Paredez* Court further held:

> If a client is a non-citizen, the attorney must advise that client of the *specific immigration consequences* of pleading guilty, *including* whether deportation would be virtually certain. Proper advice will allow the defendant to make a knowing and voluntary decision to plead guilty. . . . An attorney's failure to provide the required advice regarding immigration consequences will be ineffective assistance of counsel if the defendant suffers prejudice by the attorney's omission.

9

*Id.* ¶ 19 (emphases added).

{14}     Since *Paredez*, this Court has interpreted the law as "requir[ing] criminal defense counsel . . . to read and interpret federal immigration law and specifically advise the defendant whether a guilty plea will result in almost certain deportation." *State v. Carlos*, 2006-NMCA-141, ¶ 14, 140 N.M. 688, 147 P.3d 897. It is not sufficient to advise a client that he or she will be deported, but rather, the criminal defense attorney must inform the client with specificity what the immigration consequences might be. *See Tejeiro*, 2015-NMCA-029, ¶ 7 ("An attorney who failed to meet his affirmative burden in providing his client with information about deportation risks would thus necessarily satisfy the first prong of the *Strickland* analysis.").

{15}     In the instant case, the record is not illuminating on the question of whether Defendant's trial attorney informed him that it was a virtual certainty he would be deported. Defendant alleges that his attorney only told him he "could" be deported. But during the hearing on the motion to withdraw his guilty plea, Defendant testified both that his attorney told him he "would" be deported and that he "possibly" would be deported. To complicate matters, Defendant's trial attorney testified that she could not recall the precise language used, i.e., whether she said he would definitely be deported or whether he could be deported. Because of the ambiguous evidence, we

are unable to conclude whether Defendant's attorney properly advised him it was a virtual certainty he would be deported. However, that is not the end of our inquiry.

{16} *Paredez* not only requires defense attorneys to advise their clients if they will be deported but also demands that attorneys "conduct an individualized analysis of the apparent immigration consequences for [a d]efendant." *See Carlos*, 2006-NMCA-141, ¶ 15. Here, the specific immigration consequences confronting Defendant, in addition to the risk of deportation, are substantial. For example, as a general rule, the Attorney General "may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). However, Defendant's controlled substance conviction limits the application of this section. *See United States v. Valenzuela-Escalante*, 130 F.3d 944, 945-46 (10th Cir. 1997) (holding that possession of a controlled substance is an "aggravated felony" as defined by 18 U.S.C. § 924(c)(2) and 8 U.S.C. § 1101(43)(B)). Similarly, the Attorney General's ability to adjust Defendant's residency status under 8 U.S.C. § 1255a(b)(1)(C)(ii) is negated by a felony conviction. *See id.* ("The Attorney General shall adjust the status of any alien provided lawful temporary resident status under subsection (a) of this section to that of an alien lawfully admitted for permanent residence if the alien . . .

establish[es] that he . . . has not been convicted of any felony . . . in the United States.").

{17} Furthermore, Defendant would generally be allowed to voluntarily depart the United States at his own expense rather than being subject to removal proceedings. 8 U.S.C. § 1229c(a)(1). However, Defendant's controlled substance conviction renders him "deportable" under Section 1229c(a)(1), thus limiting this option. *See id.* (limiting the option to self-deport to aliens "not deportable under [8 U.S.C. S]ection 1227(a)(4)(B)").

{18} Most significantly, Defendant's controlled substance conviction results in a permanent bar to reentry to the United States. 8 U.S.C. § 1182(a) provides, in pertinent part, that "aliens who are inadmissible . . . are ineligible to receive visas and ineligible to be admitted to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(II) provides that an alien "convicted of . . . a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . is inadmissible." *See Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1165 (10th Cir. 2004) (stating that "aliens [that] are deemed 'inadmissible' [are] ineligible even to apply for a visa that would permit them to legally enter the United States"); *People v. Am. Sur. Ins. Co.*, 92 Cal. Rptr. 2d 216, 219 (Cal. Ct. App. 2000) (applying 8 U.S.C. § 1182(a)(2) and noting that "review of present federal immigration law indicates that the statutory bars to legal reentry are

nearly, if not flatly, impregnable for a convicted drug trafficker"). As discussed above, the conditional discharge of Defendant's drug possession charge operates as a conviction under federal law. *See* 8 U.S.C. § 1101(48)(A)(i) ("The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt[.]"). Defendant's attorney acknowledged that she did not advise Defendant of these additional immigration consequences. Indeed, Defendant testified that at the time of his guilty plea he was not aware that deportation would be permanent or that he would suffer other severe immigration consequences. Therefore, Defendant's guilty plea was not voluntary and intelligent as required by the Sixth Amendment. *See Garcia*, 1996-NMSC-013, ¶ 9; *see also Favela II*, 2015-NMSC-005, ¶ 14 ("It is imperative that every defendant entering into a plea agreement which could result in immigration consequences possesses a clear understanding of those immigration consequences.").

{19} In addition, in its order denying Defendant's motion, the district court found that "[D]efendant testified that his trial attorney advised him of the specific consequence of deportation." As previously discussed, however, Defendant's attorney was required to advise him, not only of the consequence of deportation, but also of

13

other immigration ramifications. *See Carlos*, 2006-NMCA-141, ¶ 15 ("We read *Paredez* to require *at a minimum* that the attorney advise the defendant of the specific federal statutes which apply to the specific charges contained in the proposed plea agreement and of consequences, as shown in the statutes, that will flow from a plea of guilty."). But Defendant's attorney testified that she was not aware of the full breadth of immigration consequences Defendant faced. As such, she was unable to give Defendant advice regarding the relevant federal statutes and such non-advice constituted deficient performance. *See Paredez*, 2004-NMSC-036, ¶ 16; *see also Carlos*, 2006-NMCA-141, ¶ 16 (explaining that a resident alien's defense attorney "should have analyzed and discussed with [the d]efendant the federal statute relating to cancellation of removal" and other immigration consequences beyond the issue of deportation). Defendant has thus met the first prong of the ineffective assistance of counsel test.

**2.     Prejudice**

{20}     The second prong of the *Strickland* test requires Defendant to demonstrate that his "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Paredez*, 2004-NMSC-036, ¶ 20 (internal quotation marks and citation omitted). In order to establish such prejudice, the defendant must show that there is a "reasonable probability" he would not have taken the plea had the attorney's

14

representation regarding the specific immigration consequences been constitutionally adequate. *Id.* (internal quotation marks and citation omitted). "Our recent jurisprudence adopts 'a broad approach to how a defendant can demonstrate prejudice.' " *Tejeiro*, 2015-NMCA-029, ¶ 14 (quoting *Favela*, 2013-NMCA-102, ¶ 20). The approach used by this Court is not mechanical, but rather, is determined by the facts of each case. *Favela*, 2013-NMCA-102, ¶ 19.

{21}   To show that a defendant would have rejected a plea deal had his attorney advised him of the specific immigration consequences beyond deportation, a defendant must show that his decision to decline the plea bargain "would have been rational under the circumstances." *Tejeiro*, 2015-NMCA-029, ¶ 14 (internal quotation marks and citation omitted). Generally, however, prejudice may not be shown by the defendant's self-serving statements alone and requires some corroborating evidence. *Id.* ¶ 15. Corroborating evidence may include: (1) the defendant's pre-conviction statements or actions that indicate the defendant preferred to go to trial, *Patterson*, 2001-NMSC-013, ¶ 30; (2) the strength of the State's case, *id.* ¶ 31; (3) evidence of a defendant's connections to the United States, *see Carlos*, 2006-NMCA-141, ¶ 21; and (4) the defendant's post-conviction behavior that demonstrates he probably would not have pled guilty had he received competent advice, *see Tejeiro*, 2015-NMCA-029, ¶¶ 15, 28-30. However, these factors are not exclusive. *Id.* ¶ 15 ("Our

courts have placed no limit on the types of relevant evidence a defendant may provide to demonstrate that he would have rejected the plea if given appropriate advice.").

{22} In denying Defendant's motion to withdraw his guilty plea, the district court found that there was no pre-conviction evidence that demonstrated Defendant wanted to proceed to trial. To the contrary, however, Defendant's pre-conviction efforts to engage an immigration attorney demonstrated Defendant's intent to avoid immigration consequences. Moreover, upon the advice of the immigration attorney, Defendant got married specifically in an attempt to avoid deportation. Had Defendant been properly advised, therefore, there is a "reasonable probability" he would have rejected the plea deal, *see Paredez*, 2004-NMSC-036, ¶ 20 (internal quotation marks and citation omitted), as evidenced by his pre-conviction actions that show he was concerned about the immigration consequences of his case and actively took steps aimed at reducing the consequences. *See Tejeiro*, 2015-NMCA-029, ¶ 27 (stating that a defendant's pre-conviction efforts to make the district court aware of his immigration situation strongly supported the proposition that the defendant would have rejected the plea deal if his counsel's representation had been constitutionally adequate).

{23} Although the strength of the State's case appears to have been "strong," the district court did not consider the harshness of the consequences Defendant was

confronted with as a result of his guilty plea, *see Paredez*, 2004-NMSC-036, ¶ 22, which likely would have informed Defendant's decision to proceed to trial had he known the full scope of immigration ramifications. The district court placed particular emphasis on the fact that Defendant had consulted an immigration attorney who had advised him not to plead guilty and he nevertheless decided to take the plea deal, presumably because of the strength of the State's case against him. Defendant, however, testified that he had not actually hired the immigration attorney and that she did not know the specific circumstances of his case. More importantly, Defendant very well may have made a strategic decision to go against the non-individualized advice of the immigration attorney in order to avoid being subjected to both incarceration and deportation. *See id.* ("It is conceivable that a non-citizen might opt to plead guilty and accept deportation to avoid serving a prison sentence, rather than face the possibility of both incarceration and deportation."). But had Defendant's attorney properly advised him of the severe and specific immigration consequences beyond deportation, it "would have been rational under the circumstances" for Defendant to reject the plea deal so that he could have an opportunity to be acquitted and, therefore, an opportunity to avoid the harsh immigration consequences that awaited him. *See Tejeiro*, 2015-NMCA-029, ¶ 14 (internal quotation marks and citation omitted).

{24} With respect to the evidence of Defendant's connections to the United States, Defendant has a wife and young child here. The record also indicates that Defendant alleges that he came to the United States in 1998 as a child and has lived here continuously since then. Defendant's connections to the United States and the fact that he has lived here his entire adult life could have been deciding factors in his decision to plead guilty given he was unaware of the more severe immigration consequences he faced. *See Carlos*, 2006-NMCA-141, ¶ 21. Such evidence of attachment to this country may further corroborate Defendant's claims. *See Tejeiro*, 2015-NMCA-029, ¶ 24 (explaining that where a defendant had lived with his family in the United States for over a decade, such connection to this country provided corroborating evidence that the defendant would not have accepted a plea deal had he known the immigration consequences).

{25} Finally, we note that the district court did not consider Defendant's post-conviction behavior, which suggests that Defendant would not have taken the plea deal had he fully known the immigration consequences he faced. Our jurisprudence recognizes that a defendant's post-conviction behavior may be relevant in the prejudice analysis. *Id.* ¶ 28. "In *Paredez*, our Supreme Court held that the speed of a defendant's post-conviction reaction upon discovering the adverse immigration consequences of his guilty plea could be considered when weighing the reasonable

probability that he would have acted differently with competent advice." *Tejeiro*, 2015-NMCA-029, ¶ 28. Here, Defendant's appeal to the Board of Immigration Appeals was remanded on May 27, 2014. Two days later Defendant signed an affidavit stating, "[H]ad [I] know[n] that I would surely face immigration consequences and be stripped of any rights to contest deportation [or] removal, I would not have entered into the [plea] agreement and would not have [pled] guilty." Less than a month later, on June 24, 2014, Defendant filed his motion for relief from judgement and to withdraw his guilty plea with the district court. Defendant's post-conviction actions, although not conclusive, *see id.* ¶ 29, strongly indicate that Defendant would have rejected the plea deal if his attorney had not provided deficient representation. Indeed, Defendant's continued effort to fight the immigration consequences, including this very appeal, further supports the conclusion that Defendant was prejudiced.

{26}     In sum, we hold that Defendant's attorney rendered deficient performance by not informing Defendant of the specific immigration consequences, beyond deportation, that would arise from his guilty plea. We further hold that the constitutionally inadequate representation prejudiced Defendant because he would not have taken the plea deal had he known the full scope of severe immigration consequences he faced as a result of pleading guilty.

19

**CONCLUSION**

{27}    For the foregoing reasons, we reverse the district court's denial of Defendant's motion to set aside his guilty plea and remand for further proceedings consistent with this opinion.

{28}    **IT IS SO ORDERED.**

_____
                                        **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**J. MILES HANISEE, Judge**